CARRILEE A. BELL, F.K.A. CARRILEE A. MOTHERSHED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bell v. Commissioner
Docket No. 21013-86.
United States Tax Court
T.C. Memo 1989-107; 1989 Tax Ct. Memo LEXIS 107; 56 T.C.M. (CCH) 1467; T.C.M. (RIA) 89107; March 20, 1989. *107 Held: Petitioner is an innocent spouse with respect to the specific adjustments in the deficiency notice as to which she is found to be an innocent spouse but not as to balance of the deficiency. Julian P. Kornfeld and Michael L. Bardrick, for the petitioner. Bruce K. Meneely, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in the Federal income tax liability of petitioner *108 and her former husband George L. Mothershed for the calendar year 1980 in the amount of $ 79,585.53 and an addition to tax under section 6653(a) in the amount of $ 3,979.28. After concessions, the only issues to be tried are whether petitioner qualifies as an innocent spouse under section 6013(e)[1] with respect to one or more of three specific adjustments determined in the statutory notice, and if so whether she is thereby an innocent spouse as to the entire deficiency or only as to those specific adjustments as to which we herein determine petitioner to be an innocent spouse. The parties have stipulated that a joint return was filed as required by section 6013(e)(1)(A) and that the requirements of section 6013(e)(3) and 6013(e)(4) have been met, leaving at issue: (i) Whether an interest expense deduction of $ 90,648, which the parties agree is a grossly erroneous item, is solely a grossly erroneous item of George L. Mothershed or of both Mr. Mothershed and petitioner; (ii) whether petitioner knew or had reason to know that, in addition to said erroneous interest deduction, the return contained omissions of income in the amounts of $ 2,938.79 and $ 12,379.53, both of which *109 are agreed to be grossly erroneous items of Mr. Mothershed only; and (iii) whether it is inequitable to hold petitioner liable for the substantial understatement of tax which results from the above-described three items. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. At the time the petition was filed, petitioner was a resident of Oklahoma City, Oklahoma. Petitioner and George L. Mothershed were married in 1963 while both were attending college in Arizona. Petitioner was then approximately 20 years old. Petitioner majored in home economics and psychology in college; she took no courses in business, finance, accounting, or taxation. Following graduation in 1965, the couple moved to Oklahoma, where Mr. Mothershed entered law school at the University of Oklahoma from which he graduated in due course. He thereupon went to work full time for Big Chief Drilling Co. (Big Chief), an oil and gas company in which petitioner's father Jack H. Abernathy *110 was a substantial shareholder. During the year 1972 Mr. Mothershed left Big Chief to become president of Post Oak Oil Co. (Post Oak). Mr. Abernathy was the controlling shareholder of Post Oak and both petitioner and her brother were minority stockholders. In 1974, as a result of a corporate reorganization, petitioner became the owner of 100 percent of the common stock of Post Oak while her father continued as a holder of preferred stock. Petitioner's father gradually withdrew from active management of Post Oak with Mr. Mothershed assuming sole responsibility for day-to-day management. Although petitioner and her father continued as members of the board of directors of Post Oak and possibly as officers, petitioner exercised no executive authority or control until Mr. Mothershed was ousted from his position with the company following the filing by petitioner of a suit for divorce in April 1981. Although petitioner's father had been engaged directly or indirectly in the oil and gas business for a substantial part of petitioner's life, until 1981 petitioner never engaged in any business activity. She had worked briefly as a marketing secretary while Mr. Mothershed was in law school. *111 Not until 1981 did petitioner begin to learn about the oil and gas business. Some oil and gas terminology was familiar to her prior thereto, although not really understood. By the time of trial, petitioner had acquired some understanding of those phases of this business in which Post Oak was engaged but she still did not understand financial statements, tax returns, or tax accounting. Petitioner's positions as an officer and director of Post Oak were essentially as a figurehead. She had neither the education nor the experience necessary to understand the corporate documents to which she was exposed or which she executed. Neither her father nor her husband undertook to remedy this inadequacy and petitioner did not then have the incentive to do so on her own. Mr. Mothershed's attitude and actions toward petitioner are consistent with an intent on his part to exclude petitioner from financial information and that is effectively what happened. During the marriage petitioner participated in "few serious discussions" with respect to business matters. Similarly, Mr. Mothershed prepared or caused independent certified public accountants to prepare all the tax returns required to *112 be filed by petitioner and her former husband during their marriage. Mr. Mothershed had, and was thought by petitioner to have, a sufficient understanding of Federal tax to ensure correct income tax return preparation and to be sufficiently capable in business affairs to take care of petitioner's financial interests. With the possible exception of the 1980 return, Mr. Mothershed carefully reviewed each tax return before signing it and he had sufficient tax knowledge to insure correct tax return preparation. The tax returns were never reviewed by petitioner with her former husband or with anyone else. Instead, the tax returns were always reviewed and executed by Mr. Mothershed prior to presentation to petitioner. When presented to her, petitioner merely signed her name on the space provided. She did not have sufficient business and tax knowledge to understand or to review the returns herself. When petitioner's signature was required on a business document, the document was presented to her without a sufficient explanation to enable her to understand its contents or significance. Up to the commencement of the marital discord during the year 1980, petitioner relied upon her then *113 husband to transact all business activities for the family. [2]
*114 Petitioner utilized a single bank account into which Mr. Mothershed deposited a monthly allowance with which petitioner paid household expenses. Petitioner's monthly allowance was increased from $ 1,000 in 1972 to $ 4,000 in 1977; it was maintained at that sum thereafter. Petitioner also was furnished with various credit cards and charge accounts, the bills for which, as well as expenses of the operation of the residences occupied from time to time by petitioner and her former husband, were all paid by Mr. Mothershed. Similarly, tuition expenses for both of petitioner's children were handled by Mr. Mothershed. Petitioner never saw bank statements pertaining to bank accounts used by her former husband or received comprehensible information as to the amount or sources of his annual income. In the later years of the marriage, Mr. Mothershed operated Post Oak largely for his own personal benefit. On several occasions he transferred from it to himself valuable properties, including in 1976 an interest in an oil and gas lease on which drilling had commenced, herein referred to as the McClure well. Mr. Mothershed told petitioner in very general terms that he had transferred an interest *115 in the oil and gas lease from Post Oak to himself and led petitioner to believe that, if the drilling activity resulted in a producing well, the well would be held for the joint benefit of petitioner and Mr. Mothershed. At some point thereafter petitioner became aware that the well was producing and was providing substantial funds which permitted Mr. Mothershed to increase their standard of living. Petitioner was also told by Mr. Mothershed that his share of the cost of drilling and completing the McClure well would be borrowed from Southwestern Bank & Trust Co. (Southwestern Bank), in which petitioner's father held a substantial stock interest. At her husband's request petitioner signed a guaranty agreement running to the bank. She did not know the amount of the proposed loan or that the guaranty agreement was unlimited. Mr. Mothershed's indebtedness to said bank, which resulted in the interest deduction disallowance in issue here, commenced in 1976. Prior to 1978, Mr. Mothershed and petitioner acquired a large house on a 70-acre tract of land with numerous out buildings, guest houses, and the like. Remodeling of the house commenced in 1977 or 1978 and was handled almost exclusively *116 by Mr. Mothershed who financed a large part of the cost of remodeling by additional borrowings from Southwestern Bank. Petitioner periodically expressed concern at the large expenditures of funds but was assured by her former husband that his income was sufficient to defray the cost. She was never advised that in fact a large portion of the expenditures were paid by funds borrowed from said bank. In addition to being renovated, the residence was expensively furnished. Further, numerous expensive automobiles were available to petitioner and her family for their use. By the late 1970's through at least 1980 petitioner and Mr. Mothershed were living in a fashion customary for individuals with spendable income of several hundred thousand dollars per year. Mr. Mothershed's indebtedness to the bank at the time of the divorce in 1981 was substantial. He had borrowed $ 150,000 to pay his share of the cost of drilling the McClure well and a majority of the approximately $ 800,000 spent on remodeling the residence. The revenues from the McClure well were paid directly to Southwestern Bank and deposited in an account of Mr. Mothershed over which petitioner had no signature authority. *117 Between August 1981 and April 1983 the bank applied almost all of these revenues to the payment of interest and principal on this debt. In 1981 net revenues from the well were over $ 300,000 and in 1982 over $ 175,000. On November 24, 1982, the principal balance of this debt exceeded $ 1,000,000. Petitioner did not know until after the divorce proceeding was initiated that Mr. Mothershed was heavily indebted to the bank, all of which was covered by her 1976 guarantee. That information was, however, always theoretically available to petitioner through direct inquiry to the bank. It never occurred to petitioner to make inquiry of the bank. Neither did she ever inquire of her former husband or of her father as to such matters. It is at best uncertain whether Mr. Mothershed would have fully informed petitioner as to the facts had she made inquiry of him. Upon the filing of the divorce action against Mr. Mothershed, and the removal of him from operating responsibility at Post Oak, petitioner occupied the home with her children, with Mr. Mothershed required to continue to provide support for the family, until the fall of 1982 when the Oklahoma divorce court divided the marital *118 assets as an incident to the divorce. The marital estate was divided substantially equally, with petitioner receiving tangible personal property, securities, and a one-half interest in the McClure well, all at a stated value of $ 756,653. Mr. Mothershed received similar assets valued at $ 750,078. The residence was sold and the proceeds applied largely to the payment of Mr. Mothershed's debt to said bank. An interest in a partnership was ordered to be sold, the proceeds applied to a note, and any excess divided between the parties. A substantial portion of the assets received by petitioner from the marital estate were sold in order to pay her debts, including attorney fees incurred during the divorce action. Mr. Mothershed's obligations to support the children were confirmed by the divorce court but he frequently failed to make the required payments. The title to the Post Oak stock was confirmed in petitioner, but she was ordered to assume and pay liabilities in excess of $ 900,000, the largest portion of which was a liability of Post Oak. Finally any cash in the hands of the conservator after paying his fees and other court-approved debts was to be divided equally. Following *119 the division of the marital assets, petitioner's individual standard of living was substantially reduced from that which she enjoyed in the last few years of her marriage. Petitioner and Mr. Mothershed on October 15, 1981, filed with respondent a joint Federal income tax return for the calendar year 1980. That tax return was prepared by individuals in the Oklahoma City office of Arthur Anderson & Co. The signature of Arthur Anderson & Co. as tax return preparer is dated September 23, 1981. The signature of Mr. Mothershed is dated September 29, 1981, and the signature of petitioner is undated. Mr. Mothershed actually signed the return on October 15, 1981. He did not at that time review the return in detail. Thereafter, on the same date petitioner signed the return. On that tax return, petitioner and Mr. Mothershed claimed an itemized deduction on Schedule A for interest expense in the amount of $ 158,553, which was described on the schedule as paid to SWB & T. Those initials stand for Southwestern Bank. The interest expense disallowance in the amount of $ 90,648 constituted interest owed to Southwestern Bank by Mr. Mothershed for the year 1980 which was added to the unpaid *120 principal of the indebtedness and therefore is not deemed paid for Federal income tax purposes during the year 1980. The parties stipulated that neither petitioner nor Mr. Mothershed knew at the time each of them signed the 1980 tax return that the interest deduction on the return for interest paid to Southwestern Bank included this amount of interest which had not been paid in cash. Moreover, there was nothing on the tax return itself which contained a clue to this fact; hence, a detailed examination of the return by a tax expert would not have led to discovery of this grossly erroneous item. Moreover, the statement from Southwestern Bank sent to Mr. Mothershed showing his interest obligation for the year 1980 in the amount of $ 158,553 had no breakdown between interest actually paid and interest added to principal. Petitioner neither received a copy of this statement nor saw the one furnished to her former husband. Mr. Mothershed received such a statement from the bank every year from 1976 through 1983. Payments of interest and principal were made on Mr. Mothershed's indebtedness to the bank at least in part from McClure well revenue deposited directly in one of his accounts *121 with the bank. Statements showing the breakdown of interest and principal payments were given to Mr. Mothershed whenever notes were renewed or new notes executed. He had several such transactions with the bank during 1980. Consequently, Mr. Mothershed was informed during 1980 as to the amount of interest actually paid in cash and the amount added to principal and reflected in note renewals. [3] No information as to this debt and the payments thereon during 1980 was furnished to petitioner until after the 1980 return was signed. At that time she did not even know what the term "rolled in interest" meant. During the year 1980 Mr. Mothershed received a check *122 in the amount of $ 2,938.79 from persons administering the estate of his deceased mother. There was no information on the check showing any breakdown between corpus and income. Mr. Mothershed assumed that the entire distribution was nontaxable corpus. Consequently, the amount of the check was omitted from the 1980 income tax return. Respondent determined in the statutory notice that the entire sum was income but respondent's counsel has stipulated that $ 1,859.12 of that check was nontaxable corpus. Petitioner does not dispute that the balance of that distribution is interest taxable to Mr. Mothershed and reportable on the 1980 joint Federal income tax return. Petitioner was aware that Mr. Mothershed was entitled to distributions from his mother's estate but she neither saw this particular check nor had any knowledge of its receipt. At the time the return was filed, neither petitioner nor Mr. Mothershed were aware that a part of the estate distribution represented taxable income which was omitted from the return. The additional compensation taxable to Mr. Mothershed in the amount of $ 12,379.53 represents in part expenditures paid by Post Oak directly or indirectly for the benefit *123 of Mr. Mothershed plus depreciation on automobiles. While the particular items composing this adjustment cannot be ascertained more precisely from this record, Mr. Mothershed caused Post Oak to pay his country club dues and at least some entertainment at the club. For many years such deductions have been routinely disallowed by respondent's agents on audit. Neither at the time petitioner signed the 1980 income tax return nor prior thereto did she have any knowledge of the handling by Post Oak of such matters or that this return omitted $ 12,379.53 of compensation income taxable to Mr. Mothershed. Petitioner assumed and believed that the tax laws and regulations were being properly followed and applied in the preparation of income tax returns, including the 1980 tax return. Mr. Mothershed did not know when he signed the return that the Service would audit Post Oak for its fiscal year ending September 30, 1981, and reclassify certain of its expenses as compensation taxable to him in the amount of $ 12,379.53. The handling of employee business expenses by Post Oak accorded in general with advice received by Mr. Mothershed from Arthur Anderson. And when he signed the return, Mr. Mothershed *124 may well not have recollected that Post Oak had deducted for Federal income tax purposes the precise items comprising this $ 12,379.53 adjustment. However, a man with his tax knowledge and experience must have known that some of his expenses paid by Post Oak were subject to challenge by respondent on audit. OPINION The principal issue for decision is whether petitioner qualifies as an innocent spouse under section 6013(e)[4] with respect to the three specific adjustments for the year 1980 described above. [5]Petitioner bears the burden of proving that she is entitled to relief under the innocent spouse provisions. Sonnenborn v. Commissioner,57 T.C. 373, 381-383 (1971); Rule 142. This statute is, however, a remedial provision, intended by Congress to benefit taxpayers and should be so construed. The 1984 amendments confirm this Congressional intent. Estate of Cardulla v. Commissioner,T.C. Memo. 1986-307; See Borison, "A Call for Legislative and Judicial *125 Liberalization," 40 Tax Lawyer 819, 825 (Summer 1987). *126 Section 6013(e)(1)(B)
One of the requirements for innocent spouse relief is that the substantial understatement of tax must be attributable to grossly erroneous items of the other spouse. Sec. 6013(e)(1)(B). Respondent concedes that the omissions from income of the distribution from the trust established under the will of Mr. Mothershed's mother and of the additional compensation from Post Oak are grossly erroneous items attributable solely to Mr. Mothershed and therefore satisfy the requirement of section 6013(e)(1)(B). Respondent also concedes that the excessive deduction of interest expense is a grossly erroneous item but contends that it is attributable to both spouses. Although the parties stipulated that the interest expense was due to promissory notes executed solely by Mr. Mothershed with Southwestern Bank, respondent contends that petitioner's guarantee of the notes is sufficient to cause the attribution of this grossly erroneous item to her. In addition, respondent argues that petitioner's connection with the indebtedness is established by the fact that renovation of the marital residence was financed in part by the loan proceeds. Respondent also relies *127 on the fact that the bank loans were used to fund Mr. Mothershed's interest in the McClure well and that petitioner was awarded in 1982 one-half of the McClure well as part of the property settlement. Respondent cites as authority Estate of Rogers v. Commissioner,T.C. Memo. 1979-178, and Hodges v. Commissioner,T.C. Memo. 1986-67. Estate of Rogers and Hodges are distinguishable from the instant case. In Estate of Rogers, the spouse claiming innocent spouse status occasionally worked in her husband's grocery stores, collected rentals, and received rental income from jointly held properties. We held that she had failed to prove that the omitted income was not, in part, attributable to her efforts and investments. In Hodges, we found the wife was not entitled to innocent spouse relief because, inter alia, she and her former husband were jointly involved in the business to which a portion of the understatement of tax was attributable. In this case by contrast, the interest expense deduction is attributable to indebtedness of only Mr. Mothershed. Petitioner's secondary liability as the guarantor of Mr. Mothershed's bank indebtedness *128 is only tenuously connected with the interest expense deduction. She signed the guaranty agreement in 1976 at the request of Mr. Mothershed, who told petitioner that he intended to borrow some money to finance the McClure well. She did not know that the guaranty agreement did not specify a maximum amount of indebtedness for which she was secondarily liable. She also did not know the amount actually borrowed by Mr. Mothershed in 1976 or at subsequent times. Additionally, she was not aware that the cost of renovating the house was financed by bank loans. Petitioner was not involved in deciding the amounts or dates of the bank loans or the use or application of the borrowed funds. Accordingly, the interest expense deduction with respect to the bank indebtedness is not attributable to petitioner within the meaning of section 6013(e)(1)(B). Section 6102(e)(1)(C)
Respondent next contends that petitioner has failed to establish that in signing the return she had no reason to know of the substantial understatement of tax (sec. 6013(e)(1)(C)). [6] Respondent's argument with respect to constructive knowledge has two aspects: (1) that petitioner has failed to establish the circumstances *129 surrounding the execution of the 1980 tax return and (2) that petitioner had both the opportunity and the obligation to ascertain the facts with respect to these three grossly erroneous items. Respondent argues that there is no explanation for the gap between September 29, the date next to Mr. Mothershed's signature, and October 15, the date on which the return was filed with respondent. Hence, respondent says petitioner has failed to establish that she had no reason to know of the understatement. Respondent also argues that petitioner's "input into the preparation of the return is unclear." The short answer to respondent's contention is that the evidence is to the contrary. Petitioner cannot recall the circumstances surrounding the signing by her of this tax return but she stated unequivocally that Mr. Mothershed's signature was on the return before she signed it. She further stated that no one reviewed the return for her, and that her possession or custody of the return was momentary, solely for the purpose *130 of affixing her signature thereto. We find this testimony to be entirely credible. We have found that the return was executed on October 15, 1981, based on Mr. Mothershed's testimony to this effect. Why the date "9/29/81" appears opposite his signature is not explained. Petitioner must, therefore, have also signed the return on October 15, with no time available to review the return, had she had the capacity to do so. It is, of course, theoretically possible that during the period between September 23 and October 15, 1981, the return might have been presented by Arthur Anderson personnel to an accountant or an attorney representing petitioner for review from petitioner's standpoint. However, there is simply not one iota of evidence to support such a theory. Petitioner unequivocally testified that this was not done. Moreover, the only evidence in the record as to this tax return being in the hands of anyone other than Arthur Anderson personnel is Mr. Mothershed's testimony that the return was brought to him for signature by Mr. William L. Peterson, Jr., who at that time was acting as conservator of the marital estate. Mr. Mothershed also testified, although we are not inclined *131 to credit his testimony, that Mr. Peterson was biased against him and acted in fact for the benefit of petitioner. Petitioner fully explained her connection with the 1980 income tax return. Respondent's theory has no support in this record. Her testimony stands unchallenged and she was a credible witness. [7]
The standard to be applied in making the determination as to constructive knowledge is whether a reasonably prudent person with the knowledge of facts possessed by the person claiming innocent spouse status should have been alerted to the possibility of a substantial understatement. Mysse v. Commissioner,57 T.C. 680, 689-699 (1972). This is a factual inquiry. Shea v. Commissioner,780 F.2d 561, 565 (6th Cir. 1986); Sanders v. United States,509 F.2d 162 (5th Cir. 1975). Respondent relies *132 on Shea v. Commissioner, supra; Lynch v. Commissioner,T.C. Memo. 1983-173; and Cohen v. Commissioner,T.C. Memo. 1987-537. In Shea, we found, and the Court of Appeals agreed, that Mrs. Shea had relevant financial records available to her and was at least marginally involved in her husband's business. She also knew that he was making unauthorized withdrawals from her own bank account. Based on these and other facts, we found that a "prudent taxpayer would at least have inquired into her personal financial and tax situation, thereby discovering the omissions." Shea v. Commissioner,T.C. Memo. 1984-310, revd. on another issue 780 F.2d 561 (6th Cir. 1986). Similarly, in Lynch, Mrs. Lynch was actively engaged in her husband's business and had sufficient factual information so that if she in fact did not have actual knowledge of the omissions of income, she had reason to know. No such situations exist in the case at bar. In Cohen, we held that Mrs. Cohen was not entitled to innocent spouse relief concerning understatement of tax attributable to disallowance of her ex-husband's partnership loss. We found *133 that Mrs. Cohen, a college graduate and second-grade teacher, should have taken the time or effort to inquire about items plainly visible on the tax returns which were prepared by her ex-husband, a certified public accountant. Respondent argues that Cohen establishes as a rule of law that before signing a return a taxpayer is required in every case to make inquiry as to any possible understatement in order to satisfy the "reason to know" requirement, but respondent misconstrues the holding in that case. The constructive knowledge determination is based on the facts and circumstances of each case. The facts in Cohen are materially different from those in this case. Our conclusion in Cohen was based on its particular facts. The facts in Bouskos v. Commissioner,T.C. Memo. 1987-574, are more closely analogous to those in the case at bar. In Bouskos we noted Aggie had no business education or experience. She did not participate in any of her husband's business activities; in fact, James did not even discuss business with her. James controlled the family finances. The couple did not share a joint checking account; instead, James paid all the *134 family's living expenses from his separate account, an account to which Aggie did not have access and the balance of which she did not know. Aggie was unaware of her husband's level of income during their marriage. Thus, it is clear that a reasonable person with Aggie's lack of business sophistication and lack of access to the family's financial activities could not reasonably have known of the understatements. [Bouskos v. Commissioner,T.C. Memo. 1987-574, 56 P-H Memo T.C. par. 87,574 at 87-3085, 54 T.C.M. 1117 at 1120-1121.] Moreover, in this case even if petitioner had examined and understood the return, she could not have determined that the interest deduction was overstated, that the distribution from the estate of Mr. Mothershed's mother was omitted, and that certain costs incurred by Post Oak were compensation income taxable to Mr. Mothershed. Inquiry of Mr. Mothershed was obviously impractical on October 15, 1981. We find here as we have found in other cases that petitioner's husband effectively excluded her from knowledge of business affairs, family financial matters, and the contents of the tax returns. See, e.g., Terzian v. Commissioner,72 T.C. 1164, 1170-1171 (1979); *135 Estate of Probinsky v. Commissioner,T.C. Memo. 1988-371; Guth v. Commissioner,T.C. Memo. 1987-522, on appeal (9th Cir. Jan. 11, 1988); Bouskos v. Commissioner,T.C. Memo. 1987-574; Estate of Cardulla v. Commissioner,T.C. Memo. 1986-307. While petitioner enjoyed a comfortable living standard during the period 1975 through 1980, her standard of living was not lavish within the meaning of Mysse v. Commissioner,57 T.C. 680, 699 (1972). Nothing occurred during these years which should have put petitioner on notice that she and her then husband were living beyond their means or that Mr. Mothershed would intentionally underreport his 1980 income for Federal tax purposes. We thus conclude that petitioner has carried her burden of showing that she had no reason to know of these understatements. Section 6013(e)(1)(D)
Respondent argues that it is not inequitable to hold petitioner liable for the deficiency attributable to the three substantial understatements in issue. Sec. 6013(e)(1)(D). *136 Prior to amendment by section 424(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 801, section 6013(e)(1)(D) provided that a factor to be considered in determining the equitableness of holding a spouse liable for a deficiency in tax is whether that person significantly benefited, directly or indirectly, from the items of omitted gross income. Although no longer an express statutory factor to be considered, personal benefit from a substantial understatement is still a factor to be considered in making the equity determination. H. Rept. 98-432 (Part 2) 1501, 1502 (1984). Thus, section 1.6013-5(b), Income Tax Regs., which was promulgated prior to the 1984 Amendments, is still pertinent. Purcell v. Commissioner,86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987), cert. denied    U.S.   , 108 S.Ct. 1290 (1988). This regulation provides, in part, that Whether it is inequitable to hold a person liable for the deficiency in tax, * * *, is to be determined on the basis of all the facts *137 and circumstances. In making such a determination a factor to be considered is whether the person seeking relief significantly benefited, directly or indirectly, from the items omitted from gross income. * * * [Sec. 6013-5(b), Income Tax Regs.] Normal support is not a sufficient "benefit" for purposes of determining whether it is inequitable to hold petitioner liable for the deficiency. Sec. 1.6013-5(b), Income Tax Regs.; Terzian v. Commissioner,72 T.C. at 1172. Respondent, however, argues in this case that petitioner received more than normal support in that she spent substantial amounts of money on clothing for herself and on household furnishings, received valuable jewelry as gifts, and purchased a house with her husband. We disagree with respondent. Normal support is to be measured by the circumstances of the parties. Sanders v. United States,509 F.2d 162, 168 (5th Cir. 1975); Bouskos v. Commissioner,T.C. Memo. 1987-574. It is not an absolute standard. In this case, we must determine what is *138 to be expected of a family with net income during the years 1979, 1980, and 1981 of approximately $ 300,000 per year. We find the expenditures on clothing, the receipt of valuable jewelry, and the purchase of a house on which substantial rehabilitation was undertaken to be consistent with the financial circumstances of this family. Moreover, what we are concerned with here is solely the three items -- an excessive interest deduction of approximately $ 90,000 and the omission from income of two items aggregating approximately $ 14,000. The tax benefit from the excessive interest deduction and omitted income is not traceable to the rehabilitation of the house, which was funded with bank loans, or the other expenditures by or for petitioner. Section 1.6013-5(b), Income Tax Regs., also provides that "Evidence of direct or indirect benefit may consist of transfers of property, including transfers which may be received several years after the year in which the omitted item of income should have been included in gross income." Respondent argues that petitioner benefited *139 through the division of the community estate by the divorce court. However, the properties which were allocated to petitioner in the division of the marital estate were acquired prior to 1980 and thus could not have been purchased with the omitted income or the tax benefit from the excessive interest deduction, the latter benefit having been derived in late 1981 by reason of the reduction of the 1980 income tax obligation. See Padgett v. Commissioner,T.C. Memo. 1987-130. The case of Kern v. Commissioner,T.C. Memo. 1985-400, on which respondent relies, is simply not in point. In that case, the taxpayer failed to prove that some of the properties awarded to her in the divorce were not purchased from omitted income. The other cases relied on by respondent are not helpful to respondent. In this case, not withstanding the division of the marital estate as well as the determination of the divorce court that the Post Oak common stock was petitioner's separate property, not affected by the divorce, petitioner's standard of living was substantially reduced. She was required by the divorce court to assume liabilities of over $ 900,000, part of which *140 reflected obligations of Post Oak and part an indebtedness incurred to pay fees of her divorce attorneys, litigation costs, and living expenses. Under all the circumstances of this case, based upon the entire record, we conclude that it would be inequitable to hold petitioner liable for the understatement referable to these three items. See, e.g., Terzian v. Commissioner,72 T.C. 1164, 1172 (1979). Respondent further argues, by analogy to McCoy v. Commissioner,57 T.C. 732 (1972)[8], that since both spouses were innocent of the facts, it is not inequitable to hold petitioner liable for the tax deficiency attributable to these three adjustments -- that this is "not the type of case that the innocent spouse provisions were intended to reach." In McCoy we said we do not think section 6013(e) was designed to abate joint and several liability where the lack of knowledge of the omitted income is predicated on mere ignorance of the legal tax consequences of transactions the facts of which are either in *141 the possession of the spouse seeking relief or reasonably within his reach. * * * As we see it, the omission here resulted not from any concealment, overreaching, or any other wrongdoing on behalf of the husband, though we appreciate that the "innocent spouse" provisions do not specifically require wrongdoing to be brought into play. * * * Apparently neither the husband nor the wife knew the income tax consequences of the forgiveness of indebtedness here involved. They were in this respect both "innocent spouses" and we perceive no inequity in holding them both to joint and separate liability. [McCoy v. Commissioner,57 T.C. 732, 734-735 (1972)]. However, respondent's reliance on McCoy is misplaced. With respect to the excessive interest deduction, Mr. Mothershed during 1980 was given by Southwestern Bank adequate information as to the amount of interest added to principal. Moreover, he certainly knew the amount of revenues generated by the McClure well each year, including 1980. We simply do not believe that an individual with the interest in business affairs which he had would not have known at least approximately how much of an increase *142 in his indebtedness to the bank represented new borrowings and how much rolled-in interest. At the end of 1980, the rolled-in interest represented a substantial percentage of his debt to the bank. It also represented almost 60 percent of his 1980 interest obligation on that debt. The sum is too large to have gone unnoticed. Accordingly, even if he did not realize when signing the return that this interest deduction was excessive, he should have made certain that Arthur Anderson was given correct information and he should not have signed the return without reviewing it, as was his customary practice. The failure by Mr. Mothershed to discover and correct this excessive interest deduction was negligence. Similarly, Mr. Mothershed was aware of the fact that he was causing Post Oak to pay some of his personal expenses such as his club dues and entertainment as well as his company automobile expenses. While he may have received some comfort from Arthur Anderson, it is not clear that his tax return preparers were fully informed of the facts. Mr. Mothershed was fully informed, and with his tax expertise and experience he could or should have expected increased Post Oak compensation *143 income from a tax audit. While he may not have been able to anticipate in 1981 the 1983 or 1984 audit, he was playing the "audit lottery" game. Here again Mr. Mothershed's conduct was negligent. With respect to the estate distribution we reach no such express conclusion simply because this record will not support it. It is entirely likely that Mr. Mothershed had facts in his possession which should have alerted him to inquire as to the taxability of some part of this distribution, but that does not necessarily mean that in fact he had the knowledge. The parties have stipulated that the check from the estate contained "no information as to how much was corpus and how much was income." It is further stipulated that Mr. Mothershed "believed" the check to be a distribution of corpus. However, our inability to make a finding of negligence with respect to the treatment of this small item is not material in this case for purposes of the application of section 6013(e)(1)(D). In applying the requirements of sections 6013(e)(1)(B) and (C), each item as to which a party claims to be an innocent *144 spouse must be examined separately. The items together must comprise a substantial understatement but each item must be grossly erroneous. The alleged innocent party must lack knowledge (both actual and constructive) of the entire understatement, and hence of each item. But the statute provides that the test under section 6013(e)(1)(D) as to equitable considerations is based upon "all the facts and circumstances" in the record. Sec. 1.6013-5(b), Income Tax Regs. It is not necessarily affected by the particular facts pertaining to any one of the grossly erroneous items. On the basis of all of the facts and circumstances in this case, we conclude that the two spouses were not equally innocent. The equities are entirely on the side of petitioner. McCoy is not in point. Mr. Mothershed's conduct in connection with the 1980 tax return was negligent while petitioner's conduct was innocent. Thus we hold that petitioner is an innocent spouse with respect to each of these three items. Effect on Tax Liability of Innocent Spouse Status
Petitioner finally contends that she should be relieved of liability for the tax and interest attributable to *145 all adjustments listed in the notice of deficiency, not just those with respect to which innocent spouse status is established. Petitioner's contention contradicts section 6013(e)(1), which provides that if four requirements are met (sec. 6013(e)(1)(A)-(D)), then the innocent spouse "shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement." (Emphasis added.) Although the legislative history does not focus on this point, we interpret the unambiguous language of section 6013(e)(1) to relieve an innocent spouse of a part of the deficiency (and interest and additions) to the extent that the spouse meets the requirements of section 6013(e) with respect to one or more specific items of income or deduction which are in issue. Where the necessary showing has been made, the spouse is entitled to relief from liability only for tax, interest, and addition attributable *146 to a substantial understatement with respect to the specific item or items as to which the spouse has innocent spouse status. See Douglas v. Commissioner,86 T.C. 758, 761 n. 3 (1986); Purcell v. Commissioner,86 T.C. at 235 n. 3. Cf. Jenkins v. Commissioner,T.C. Memo. 1988-326 (taxpayer qualified as an innocent spouse as to some, but not all, of the tax liability attributable to the omission from gross income for funds that were embezzled by taxpayer's wife). Petitioner stipulated that she is not an innocent spouse as to the farm loss in the amount of $ 21,775, a deduction for accounting fees in the amount of $ 2,900, and a recapture of investment tax credit in the amount of $ 10,877.50. Thus, petitioner is not relieved of liability with respect to that portion of the deficiency that is attributable to these items. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. There is conflicting testimony in this record as to the extent to which Mr. Mothershed sought to inform petitioner as to his business activities and those of Post Oak. Petitioner testified before us. She was forthright and credible. Mr. Mothershed testified by deposition. In that deposition he affirms the bitterness of the divorce proceedings and his continuing animosity toward petitioner and her father. Since we did not observe the demeanor of Mr. Mothershed as a witness, we cannot form an accurate opinion as to his credibility. However, when his deposition, with its own internal inconsistencies, is considered in the context of the entire record, we are convinced that Mr. Mothershed exaggerated the extent to which he discussed business affairs and tax matters with his former wife. For example, Mr. Mothershed testified with respect to petitioner's review of tax returns: Q. In prior years, for instance in 1977, 1978, 1979, did Carrie review the tax returns before she signed them at all? A. She looked at them, yes. Q. Would she look at, for instance, your Schedule C? A. I doubt she knew what Schedule C is. If Mr. Mothershed had in fact reviewed income tax returns with petitioner, she would have been forced to know the purpose of a Schedule C. Thus, we have resolved conflicts in the testimony of these two witnesses by accepting petitioner's testimony as the more accurate.↩
3. The parties stipulated that "At the time of signing the 1980 joint return, George L. Mothershed did not know that any part of the interest deduction claimed included any 'rolled in interest.'" In view of Mr. Mothershed's testimony that he received interest and principal statements during 1980 when notes were executed, we can only understand the stipulation to mean that when he signed the return on October 15, 1981, he did not check it to verify whether or not the interest deduction exceeded the amount paid in cash.↩
4. Section 6013 provides as follows: (e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES. -- (1) IN GENERAL. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. ↩
5. Respondent concedes that neither petitioner nor Mr. Mothershed is liable for the addition to tax under section 6653(a)↩ for the year 1980.
6. The parties stipulated that petitioner had no actual knowledge of the substantial understatement of tax attributable to the three grossly erroneous items in issue.↩
7. We note in passing that respondent's trial memorandum stated that respondent would call William L. Peterson, Jr., as a witness to "testify about the preparation and execution of the 1980 return * * *", but Mr. Peterson did not testify.↩
8. Although not discussed by the parties, Lessinger v. Commissioner,85 T.C. 824, 838↩ (1985), is to the same effect.