ARTHUR J. AND MINETTE HILLMAN, ROMAN T. HOUGHT, BECKY A. HOUGHT, FLORINE C. PETERSEN, ARMAND J. AND INEZ J. SARTI, BARTON F. SCHOENEMAN AND ESTATE OF KATHRYN SCHOENEMAN, DECEASED, BARTON F. SCHOENEMAN, CO-INDEPENDENT EXECUTOR, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hillman v. Commissioner
Docket No. 16907-86
United States Tax Court
T.C. Memo 1993-151; 1993 Tax Ct. Memo LEXIS 155; 65 T.C.M. (CCH) 2342; T.C.M. (RIA) 93151; April 7, 1993, Filed *155 For Becky A. Hought, petitioner: Nancy R. Crow. For respondent: James E. Gehres. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION
JACOBS, Judge: Respondent determined a deficiency of $ 17,262 for 1981 with respect to the joint Federal income taxes of Becky A. Hought (petitioner) and her former husband, Roman T. Hought (Dr. Hought). Subsequent to the issuance of the notice of deficiency (dated March 4, 1986), Dr. Hought paid the Internal Revenue Service $ 8,631, or one-half of the deficiency, and the interest then due on one-half of the deficiency payment. The deficiencies involved are attributable to the disallowance of losses and deductions claimed by the Houghts and the other captioned petitioners from purported trading transactions with Hillcrest Securities (Hillcrest transactions). By stipulation, all petitioners agreed to the adjustments determined by respondent with regard to the losses and deductions claimed with respect to their Hillcrest transactions. Petitioner, however, claims (in an amendment to her petition) entitlement to innocent spouse relief under section 6013(e). Thus, the sole issue to be herein decided is whether petitioner qualifies for *156 such relief. We hold she does. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Boulder, Colorado, at the time the petition was filed. Petitioner studied interior architecture and design at the University of Oregon at Eugene for 1 year and at Oregon State College at Corvallis for an additional year. She had no training in business, tax, or accounting either before or during her marriage to Dr. Hought. Dr. Hought received a D.M.D. degree from the University of Oregon dental school in 1975, and completed a 3-year oral surgery residency program at Denver General Hospital in Colorado in 1978. He took some business classes in college. Petitioner married Dr. Hought in 1968. After their two daughters were born in 1976 and 1978, and Dr. Hought had begun his oral surgery practice, petitioner managed their household. Before, during, and after 1981, petitioner *157 worked part-time for Dr. Hought's professional corporation. (Petitioner was not a shareholder of the corporation and had little involvement with its financial affairs.) She scheduled appointments, posted accounts receivable and patients' charts, mailed out statements, and developed x rays. Her 1981 compensation was $ 10,100. In 1981 petitioner and Dr. Hought maintained a joint checking account at the First Bank of Gunbarrel in Boulder, Colorado. Dr. Hought deposited money in their joint bank account to pay household expenses. His other funds were kept in separate bank accounts in his or his corporation's name. Dr. Hought made all investment decisions for the family; all investments were held solely in his name. Petitioner was not familiar with the nature of the investments and had little, if any, contact with Dr. Hought's investment advisers. Petitioner was not familiar with any of the aspects of the Hillcrest transactions, including the tax advantages sought therefrom. Dr. Hought alone engaged in such transactions. She thought Dr. Hought invested $ 1,800 in the Hillcrest transactions, whereas the actual amount invested was $ 6,250. The Houghts timely filed their 1981 joint *158 Federal income tax return with the Internal Revenue Service Center at Ogden, Utah. On Schedule A (Itemized Deductions), line 31, under the caption "Miscellaneous Deductions", the following two items were listed: Hillcrest Securities invest.
advisory fees
$ 1,250
Govt. sec. trading loss
49,837
These claimed items, totaling $ 51,087, were both related to the Hillcrest transactions. Respondent disallowed deductions for the two claimed items. Petitioner does not contest such disallowance. The disallowed items are grossly erroneous items for which there is no basis in fact or law within the meaning of section 6013(e)(2)(B). The substantial understatement of tax for 1981 was $ 17,262, an amount which is greater than 25 percent of petitioner's "preadjustment year" (1985) income within the meaning of section 6013(e)(4). Dr. Hought employed an accountant to prepare the Houghts' Federal income tax returns and provided the accountant with information to complete the returns. In the early years of their marriage, before the family could afford to make investments, Dr. Hought personally prepared the tax returns. Petitioner, who knew little about financial and tax matters, *159 or about investments, trusted her husband and his advisers. For 16 years she signed the Federal income tax returns Dr. Hought or his accountant had prepared. She did not know or understand, and her husband did not tell her, the specifics of the investments reported on the tax returns. When Dr. Hought presented the 1981 Federal income tax return to her for signature, petitioner accepted what her husband and his accountant had done and saw nothing that appeared unusual to her. The deduction for the claimed loss arising from the Hillcrest transactions was obscured on Schedule A by the entry "Govt. Sec. Trading Loss -- $ 49,837". The Houghts received a tax refund of $ 14,996 for 1981 which was generated by the deductions claimed with respect to the Hillcrest transactions. On May 4, 1982, Dr. Hought deposited $ 33,155.70, including the refund check, into the Houghts' joint checking account in the First Bank of Gunbarrel. On the same day, he wrote a check for $ 36,000 to Boettcher Co., a stock brokerage house, where he maintained a money market account in his name. The funds in his Boettcher Co. account were used for other investments, including First Blood Associates, a motion *160 picture investment. The Houghts made no unusual household purchases nor did their standard of living change significantly as a result of the receipt of the 1981 Federal tax refund in 1982. Dr. Hought bought himself a new Rolex watch and bought petitioner a relatively inexpensive necklace. The Houghts purchased new automobiles in 1983. Dr. Hought's automobile was a $ 36,844.56 Porsche, purchased by his professional corporation for cash. Petitioner's automobile was a 1983 Volvo station wagon which was purchased on credit. The Houghts separated in 1983. Their marriage was dissolved in 1984. Pursuant to a negotiated Separation and Property Settlement Agreement signed in August 1984, the marital property was divided between them as follows: Roman Hought:
Professional corporation stock
$ 106,000 655 Poplar Equity
20,000 1025 Maxwell Equity
39,000 Profit sharing plan
65,299 Volvo loan liability
(9,500)
Jeep and motorcycle
2,450 Personal property
12,485 Joint liabilities, including First Blood
(45,200)
Liability to Becky
(46,500)
Benchmark & Cinste stock
0 TOTAL VALUE:
$ 144,034 Becky Hought:
4466 Dallas Place Equity
$  47,000 Volvo
16,500 Cash
27,000 Note
19,500 United Energy Technology stock
380 Personal property (includes daughters'
furniture)
34,130 Benchmark & Cinste stock
0 TOTAL VALUE:
$ 144,510 *161 The separation and property settlement agreement, which was approved by the District Court of Jefferson County, Colorado, in its Decree of Dissolution of Marriage, provided: For the years 1968 through 1983 the parties believe that they have duly paid all income or other taxes due for such years and that they do not owe any interest or penalties with respect thereto. No tax deficiency proceeding is pending or threatened against them thereon, and no audit is pending with respect to any such joint returns to the best of their knowledge. If the parties' state or federal income tax liability for any such year is hereafter adjusted, by audit or otherwise, any refund or tax obligation shall be split equally between Husband and Wife. This recognizes that both parties equally shared in any benefits or liabilities during the (1968-1983) time period.
At the time the Houghts' marriage was dissolved, they were unaware that there was a potential tax liability with respect to the claimed deductions arising from the Hillcrest transactions. Subsequent to the dissolution of their marriage, petitioner agreed to forgive $ 4,500 of the interest due on a note she received in the property settlement, *162 as well as approximately $ 6,000 of family support. In the fall of 1990, the Houghts appeared before the Referee of the District Court of Boulder County, Colorado, in connection with petitioner's request for a modification of the previous family support arrangement. At that time Dr. Hought's monthly income was $ 14,400, while petitioner's monthly income, other than family support, was $ 579. The District Court found that petitioner, who suffers from rheumatoid arthritis, was capable of earning no more than $ 1,580 a month. The Court ordered Dr. Hought to pay petitioner $ 3,250 a month in family support. The Court stated: On the basis of the aforesaid exhibits and testimony, this Court finds that the unallocated family support payments currently made by Respondent [Dr. Hought] are insufficient to enable Petitioner to reasonably provide for the care/or education of the minor children. The Court further finds that applying the evidence presented to the applicable legal standards, that the amount of unallocated family support currently paid by Respondent [Dr. Hought] is unconscionable in view of the change of circumstances relative to the income of Respondent [Dr. Hought], Petitioner's *163 expenses, Petitioner's physical condition, the increased needs of the parties' children, Petitioner's potential tax liability and the disparity in the standard of living between Petitioner and Respondent [Dr. Hought].
In addition, the Court held that Dr. Hought was liable to pay 67 percent of the tax liability involving the disallowance of the claimed deductions arising from the Hillcrest transactions. OPINION Section 6013(d)(3) provides that, in the case of a joint return, the tax liability of a husband and wife shall be joint and several. However, under section 6013(e) [1] an "innocent spouse" is relieved of liability if he or she proves: (1) That a joint return has been made for a taxable year; (2) that on such return there was a substantial understatement of tax; (3) that the understatement exceeds a certain percentage of the preadjustment year income of the spouse seeking relief; [2] (4) that the substantial understatement of tax is attributable to grossly erroneous items of the other spouse; (5) that the spouse seeking relief did not know, and had no reason to know, of such substantial understatement when he or she signed the return; and (6) that after consideration of *164 all the facts and circumstances, it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such substantial understatement. Estate of Simmons v. Commissioner, 94 T.C. 682, 683 (1990); Purcell v. Commissioner, 86 T.C. 228, 234-235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Petitioner bears the burden of establishing that each of the requirements of section 6013(e) has been satisfied. Purcell v. Commissioner, 826 F.2d at 473. *165 The requirements of section 6013(e) are conjunctive. Therefore, a failure to meet any of the requirements will prevent a spouse from qualifying for relief. Bokum v. Commissioner, 94 T.C. 126, 138 (1990). The parties agree that a joint Federal income tax return was filed; that the understatement of tax was substantial; that the understatement exceeds the percentage of income requirements of section 6013(e)(4); and that the claimed deductions are grossly erroneous items for which there is no basis in fact or law within the meaning of section 6013(e)(2)(B). Thus, the controversy herein focuses on three requirements: (1) Whether the grossly erroneous deductions relating to the Hillcrest transactions were items attributable only to Dr. Hought; (2) whether petitioner did not know, and had no reason to know, of the substantial understatement when she signed the 1981 income tax return; and (3) whether it would be inequitable to hold petitioner liable for the income tax deficiency attributable to such substantial understatement. Turning to the first of the aforementioned three requirements, we conclude that the Hillcrest transactions were items attributable *166 to Dr. Hought alone. Although petitioner was told by Dr. Hought that he was making the Hillcrest transactions, she did not know any details about the transactions. There is nothing to show that any of the Houghts' investments were ever titled in their joint names. Petitioner, whose testimony we regard as credible, stated that Dr. Hought made all investment decisions, and that his name alone was on all investment accounts and documents. Petitioner never signed an investment document. Her name was not on any investment or stock brokerage account. Indeed, she had no meaningful involvement in the family investments. Consequently, the Houghts were not jointly involved in the Hillcrest transactions. With regard to the second of said three requirements, we are persuaded that, in signing the 1981 joint Federal income tax return, petitioner did not know, and had no reason to know, of the substantial understatement of tax with respect to the claimed Hillcrest deductions. She was unsophisticated and untrained in financial matters. She relied on Dr. Hought to make investments. She relied on him and his accountant to prepare joint tax returns. To her untrained eye, even relatively *167 large deductions inconspicuously included under "Miscellaneous Deductions" did not arouse her suspicion. Moreover, from the obscure manner in which the accountant listed the deductions, it appears that only advisory fees of $ 1,250, rather than a trading loss of $ 49,837, pertained to the Hillcrest transactions. Petitioner testified that she thought the most that could be lost on the Hillcrest transactions was $ 1,800, which she believed to be the amount of the investment. Actually Dr. Hought had invested $ 6,250. We note that a number of innocent spouse cases have focused on the circumstances which might give a spouse "reason to know" of erroneous deductions. The inquiry has been whether a reasonably prudent taxpayer should have known that the return he or she signed contained a substantial understatement of tax. In Bokum v. Commissioner, supra at 151, using the "knowledge of the transaction" standard, we declined to adopt the more lenient "facts and circumstances" approach used in Price v. Commissioner, 887 F.2d 959, 962 (9th Cir. 1989), revg. an Oral Opinion of this Court dated Dec. 16, 1987. See also Erdahl v. Commissioner, 930 F.2d 585 (8th Cir. 1991), *168 revg. T.C. Memo. 1990-101, which followed the Price approach. This case is not appealable to either the Ninth or Eighth Circuit, so the Bokum rationale will be applied here. In Bokum we held that in order to be eligible for innocent spouse relief with respect to erroneous deductions, the allegedly innocent spouse must show that he or she was unaware of the circumstances that gave rise to the error on the tax return. Merely being unaware of the tax consequences of a transaction is not sufficient. A comparison of the facts in Bokum with those present in this case reveals striking differences between the two cases. Unlike Mrs. Bokum, who was well aware of the sale of the ranch whose tax treatment was in question, petitioner did not understand either the Hillcrest transactions or the desired tax advantages. Unlike the Bokums' tax return, which set forth prominently a distribution of over $ 2 million, the Houghts' tax return placed its erroneous tax deductions inconspicuously on Schedule A in a rather confusing manner which would not have alerted a reasonably prudent person in petitioner's circumstances. In Bokum, we stated that Mrs. *169 Bokum should have been alerted by the failure of the tax return preparer's failure to sign the return. By contrast, Dr. Hought's accountant did sign the return, and petitioner relied on him to prepare it correctly. Petitioner was provided with so little information about the Hillcrest transactions that she had no reason to suspect that they were reported incorrectly. Indeed, even Dr. Hought was vague about the nature of the transactions. Under the Bokum standard, petitioner must have had sufficient knowledge of the circumstances of the Hillcrest transactions to permit her to inquire into its appropriate tax treatment. Under the circumstances of this case, we do not think mere knowledge that petitioner's husband had written a check for $ 1,800 to make such an investment is sufficient knowledge of the transaction to put an unsophisticated taxpayer like petitioner on notice of a need to inquire into the correct treatment of an item on a tax return that has been prepared by an experienced accountant. In Stevens v. Commissioner, 872 F.2d 1499 (11th Cir. 1989), affg. T.C. Memo. 1988-63, the Court of Appeals for the Eleventh *170 Circuit, in refusing to grant innocent spouse relief, approved our application of its "reason to know" standard. The Court of Appeals stated that the "reason to know" standard is based on whether a "reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted." Id. at 1505 (fn. ref. omitted). As the Court of Appeals articulated the test, the proper inquiry is whether "the spouse had sufficient knowledge of the facts underlying the claimed deductions such that a reasonably prudent person in the taxpayer's position would question seriously whether the deductions were phony." Id. Certainly by applying this test to the facts of this case, petitioner is entitled to innocent spouse relief. Like Bokum, the facts in Stevens are distinguishable from petitioner's situation. Mr. Stevens was a tax shelter promoter who provided his family with a lavish lifestyle. The family owned two opulent residences, three Excalibur automobiles worth $ 45,000 each, various other expensive cars, and several boats. *171 Mr. Stevens showered Mrs. Stevens with jewelry. Mrs. Stevens was aware that he had invested in a real estate partnership and was present at her husband's presentations of tax shelters to investors. In her role as corporate officer and bookkeeper, she had ready access to, if not active participation in, the family's investment records. By contrast, petitioner played no active role in her husband's business, was never present at an investment discussion, and had no ready access to her husband's investment records. Under the circumstances of the Houghts' married life, in which Dr. Hought was in charge of investments (and invested exclusively in his own name), it would not be reasonable to require petitioner, a financially unsophisticated housewife, to investigate and query her husband's and his accountant's treatment of his transactions on the tax return. In our judgment, the facts of this case are more closely aligned with those in Bell v. Commissioner, T.C. Memo. 1989-107, and Bouskos v. Commissioner, T.C. Memo. 1987-574, holding that the taxpayers were entitled to innocent spouse relief. Finally, as to the last of *172 the three aforementioned requirements, we think it would be inequitable under these facts and circumstances to hold petitioner liable for the tax deficiency created by Dr. Hought's participation in the Hillcrest transactions. An important consideration is whether petitioner benefited significantly from the understatement of tax. Bell v. Commissioner, supra; see sec. 1.6013-5(b), Income Tax Regs. In our opinion she did not. The property settlement between the Houghts was, at least in terms of agreed value, substantially equal, and petitioner's share was not particularly large. Dr. Hought retained his profit sharing plan, and his oral surgery practice continued to provide him with a comfortable income. While petitioner was able to complete her college education after the divorce, she has been unable to find suitable employment because of her arthritic condition. And, as found in the 1991 Colorado District Court Referee's order modifying family support payments, there is a substantial financial disparity between the former spouses. Petitioner and her two minor daughters received only normal family support during the marriage and afterwards. *173 It is well established that normal family support is not considered in deciding whether it would be inequitable to hold a purported innocent spouse liable. Belk v. Commissioner, 93 T.C. 434, 440 (1989); sec. 1.6013-5(b), Income Tax Regs.
Respondent argues that petitioner should not be granted innocent spouse relief because she and her daughters received a large amount of money in family support payments. What respondent fails to point out is that these payments were made over a 10-year period for the support of three family members. Respondent contends that, after Dr. Hought fell behind in his family support payments in 1986 and had to borrow $ 30,000 from his professional corporation to pay the arrearage, petitioner received a total of $ 54,400 in 1987. In a time period generally coinciding with her receipt of the $ 30,000, petitioner, on the advice of her accountant, transferred $ 20,000 into accounts in the names of each daughter over a 2-year period in order to save income taxes, and as petitioner testified, "I thought that that would be a way to ensure that if I died, the money would go to my daughters". Respondent argues that petitioner should *174 have used the $ 30,000 she received in family support arrearage to discharge her obligation to the Internal Revenue Service under the terms of her negotiated separation and property settlement agreement. We reject respondent's argument. [3]
There is no evidence that petitioner received any significant benefit in terms of lavish expenditures or gifts from Dr. Hought as a result of the tax refund generated by the Hillcrest transactions. After the refund check was received, the subsequent expenditures benefited Dr. Hought, namely, the purchase of a Porsche automobile, a Rolex watch, and the First Blood motion picture investment. Respondent advances the argument that because Dr. Hought knew as little as petitioner about the Hillcrest transactions, they were both equally ignorant and, therefore, they should both be held equally liable. We reject this argument *175 as untenable. The evidence is clear that only Dr. Hought engaged in the Hillcrest transactions, and that he at least had some understanding of the financial and tax consequences, while petitioner knew nothing about it. Although Dr. Hought and his accountant may have misunderstood or misinterpreted the income tax laws, they nonetheless had access to the offering materials presented by Hillcrest Securities; petitioner did not. Dr. Hought made the decision to participate in the transactions; petitioner did not. In our opinion, it would be inequitable to hold petitioner liable for the tax deficiency. Based on this record, we hold that petitioner has satisfied all the requirements to qualify as an innocent spouse under section 6013(e). She is therefore relieved of liability for the deficiency owed with respect to the 1981 joint Federal income tax return filed by her and Dr. Hought. To reflect the foregoing, An appropriate decision will be entered. Footnotes
1. Although the year before us is 1981, we apply the statute as amended in 1984. This is because sec. 424(a) of the Tax Reform Act of 1984 (division A of the Deficit Reduction Act of 1984), Pub. L. 98-369, 98 Stat. 494, 801-802, amended sec. 6013(e) retroactively to all open years to which the Internal Revenue Code applies.↩
2. This requirement does not apply to any liability attributable to the omission of an item from gross income, as opposed to liability attributable to a deduction, credit, or basis. Sec. 6013(e)(4)(E).↩
3. However, it is not for us to decide whether petitioner has any liability to Dr. Hought under the provisions of the separation and property settlement agreement.↩