BOBBY W. JENKINS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jenkins v. Commissioner
Docket No. 28255-85.
United States Tax Court
T.C. Memo 1988-326; 1988 Tax Ct. Memo LEXIS 354; 55 T.C.M. (CCH) 1354; T.C.M. (RIA) 88326; July 27, 1988; As amended July 29, 1988 Bobby W. Jenkins, pro se. Nancy W. Hale, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner *355 determined deficiencies in Federal income tax of petitioner and his former wife Sarah Jenkins ("Sarah") in the amounts of $ 1,348 for 1980 and $ 6,101 for 1981 and an addition to petitioner's 1981 Federal income tax pursuant to section 6653(a)(1) and (2). After concessions, the only issues for decision are whether petitioner is entitled to relief as an innocent spouse pursuant to section 6013(e) [1] for the 1981 tax year and whether any part of the underpayment of tax for the 1981 tax year was due to negligent or intentional disregard of rules and regulations pursuant to section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner resided in West Point, Mississippi at the time he filed a petition in this case. On April 15, 1982, petitioner filed a joint 1981 Federal income tax return with Sarah. Petitioner was married to Sara from September 4, 1980, until their divorce on March 27, 1985. Since the divorce, petitioner has had full custody of and has provided the sole support for his daughter who was *356 born to petitioner and Sarah during their marriage. At the time of petitioner's marriage to Sarah, Sarah was working for Deluca General Contractor ("DGC") in Memphis, Tennessee. In 1981 DGC moved its office into petitioner's living room. Joe Deluca, the owner of DGC, was present in petitioner's home at least one or two times each week during 1981 discussing with Sarah business, bills to be paid, and errands to be run for DGC. Petitioner was under the impression that Sarah was working for DGC during 1981. During 1981 petitioner had two joint checking accounts with Sarah in which both petitioner's and Sarah's income was deposited. Sarah did all the banking for petitioner. Petitioner would take money from his pay for his monthly expenses and give the rest to Sarah to pay family expenses. Household expenses were paid out of the joint account with a combination of Sarah's income and petitioner's income. Petitioner noticed during 1981 that Sarah received larger amounts of money from DGC than the $ 200 per week salary petitioner believed she had been previously receiving. In explanation, Sarah told petitioner that she had been made vice president of DGC and that she was receiving *357 commissions from jobs she worked on for Mr. Deluca. In reality, Sarah was paid $ 150 per week from August 1980 to February 1981 and $ 75 per week thereafter for answering the telephone and doing errands. In February of 1981 petitioner and Sarah moved from a two-bedroom apartment to a two-story house with double carport, four bedrooms, two bathrooms, a living room, formal dining room, kitchen and a study. The house was newly remodeled. Sarah secured the lease on the house without petitioner's assistance or participation. At the time petitioner was employed by Shippers Transport as a truck driver and was not often home. Sarah told petitioner that the house rental was $ 365 per month although the actual rental price was $ 450 per month. Sarah used checks from DGC to pay petitioner's rent and telephone bills during 1981 in part because DGC's office was in petitioner's house and his home phone was used as the DGC office phone. Sarah also purchased a number of household items during 1981 including a refrigerator, table and chairs, a coffee table, a bed, a tool box and $ 200 to $ 300 worth of tools. Moreover, petitioner and Sarah took a trip to Daytona Beach in July of 1981 which *358 was paid for by Sarah with a DGC check. Petitioner did not know a DGC check was used to pay for the trip. During 1981 Sarah embezzled a $ 24,572.21 from DGC. Petitioner stipulated that he "became aware of the fact that Sarah Jenkins had embezzled funds from Deluca General Contractor no later than September 8, 1981" although at trial petitioner maintained that he did not know of the embezzled funds from DGC until after he filed the return in 1982. On September 8, 1981, Sarah was arrested. Petitioner was not given an explanation for the arrest by the police and was not given an opportunity to view any of the information against her. The night of the arrest Mr. Deluca told petitioner that Sarah had embezzled all his money and "that he didn't exactly know how to prove that she had, but that he was going to." Soon after the arrest petitioner found some joint checking account records recording deposits of approximately $ 24,000. Approximately $ 10,000 of these deposits were made with money petitioner had earned. The balance, petitioner reasonably believed, was attributable to Sarah's salary from DGC. He also found checks that he had written to pay his bills which Sarah never mailed. *359 In September 1981 Sarah was indicted for embezzlement by the Grand Jury for the Shelby County Criminal Court. Petitioner separated from Sarah in January of 1982 and had no contact with her until April 13 of that year. On April 13 petitioner called Sarah to inquire about any W-2 Forms she may have received for the 1981 tax year. At that time Sarah had not received a W-2 form from DGC and insisted that she had not embezzled any funds from DGC. Petitioner filed the 1981 return jointly which he signed for Sarah with her permission. The return did not report any income from Sarah's employment with DGC and did not report any income from the embezzlement perpetuated by Sarah. In May or June of 1982 petitioner received a W-2 Form from DGC reporting wages of $ 556 earned by Sarah. Petitioner did not file an amended return to reflect the income reported on this W-2 Form. On February 28, 1983, Sarah pled guilty to the charge of fraudulent breach of trust. OPINION The first issue we must decide is whether petitioner is entitled to relief as an innocent spouse pursuant to section 6013(e). [2] Generally spouses filing a joint tax return are jointly and severally liable for tax due. *360 Sec. 6013(d)(3). Section 6013(e) provides an exception to the general rule of joint and several liability. The burden of providing each element of section 6013(e) is on petitioner. Welch v. Helvering,290 U.S. 111 (1933); Sonnenborn v. Commissioner,57 T.C. 373, 383 (1971); Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent has conceded that (1) petitioner filed a joint return, (2) there was a substantial understatement of tax for 1981 and (3) the substantial understatement was attributable to Sarah's grossly erroneous failure to report the funds that she embezzled. Nevertheless, to be relieve of liability for tax attributed to Sarah's omitted income petitioner must also prove (1) that in signing the return he did not know, and had no reason to know, that there was such substantial understatement, and (2) taking into account all the facts and circumstances, *361 it is inequitable to hold petitioner liable for the deficiency in tax. In order to satisfy his burden of proof that he had no knowledge and no reason to know of any omitted income, petitioner must establish that a reasonably prudent taxpayer, with his knowledge of family finances would have no reason to know of the omission. Sanders v. United States,509 F.2d 162, 166-167 (5th Cir. 1975). The parties have stipulated that "petitioner became aware of the fact that Sarah Jenkins had embezzled funds from Deluca General Contractor no later than September 8, 1981." this date is seven months before he signed the 1981 joint return. Petitioner's testimony clarified this stipulation. At trial we were impressed with petitioner's truthfulness, and we believe that petitioner had no reason to believe that his wife was embezzling. A stipulation is to be treated as a conclusive admission by the parties, and may not be qualified, changed, or contradicted except with the Court's permission where justice requires. Rule 91(e), Tax Court Rules of Practice and Procedure. In light of petitioner's credibility and his lack of an attorney during litigation, we believe that justice requires *362 that we allow petitioner to modify his stipulation. See Jasionowski v. Commissioner,66 T.C. 312, 318 (1976). In September of 1981, Sarah was arrested and indicted on charges of embezzlement and conversion but petitioner was not given an explanation for the arrest by the police and was not given an opportunity to view any of the information against her. The only notice of embezzlement petitioner has was the accusations of Joe Deluca, Sarah's employer. The arrest and Deluca's accusations prompted petitioner to check his joint bank account records, and he found deposits of $ 24,000, $ 10,000 of which was attributed to petitioner's income and 14,000 of which was contributed by Sarah. Petitioner thus knew that Sarah has received $ 14,000, but because she had been working for DGC, petitioner reasonably attributed the source of this money to her bona fide employment at DGC. Petitioner had no knowledge and had no reason to know that these funds were embezzled. Nevertheless, petitioner should have reported the $ 14,000 despite DGC's failure to send a Form W-2. Petitioner should have known that there was a substantial underpayment of tax on the 1981 return attributable *363 to this $ 14,000. Accordingly, as to that amount petitioner does not qualify as an innocent spouse and is not relieved of liability for the deficiency attributable to $ 14,000. On the other hand, petitioner has persuaded us that he had no knowledge of Sarah's embezzlement before he filed the 1981 joint Federal income tax return. We believe that it would be inequitable to hold him liable for the deficiency attributable to embezzled funds. While petitioner benefitted from the $ 14,000 that he knew should have been reported and which he believed was Sarah's salary from DGC, we do not believe that petitioner benefitted from funds exceeding $ 14,000. See section 1.6013-5(b), Income Tax Regs. Except from one trip to Daytona, Florida, the benefits he received from the $ 14,000 were no more than normal and incidental living expenses. Moreover, petitioner has full custody of and is the sole support for his daughter who was born to petitioner and Sarah during their marriage. Consequently, we hold that petitioner is an innocent spouse as to the deficiency attributable to funds exceeding $ 14,000 embezzled by Sarah. The next issue we must decide is whether any part of the underpayment *364 of tax was due to negligent or intentional disregard of rules or regulations. Given petitioner's inability to marshal the true and accurate facts concerning his 1981 Federal income tax return because of Sarah's repeated deceit and petitioner's confusion over whether to report Sarah's salary because of DGC's failure to deliver to petitioner a timely W-2 form, we do not believe that this case is appropriate to impose additions to tax pursuant to 6653(a). Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the year in issue. ↩
2. Section 424(a) of the Tax Reform Act of 1984 amended section 6013(e), with retroactive application to all taxable years to which the Internal Revenue Code of 1954 and 1939 applies, Pub. L. 98-369, section 424, 98 Stat. 801; H. Rept. 98-432 (Part 2) 1501, 1503 (March 5, 1984). ↩