Margaret **WIKSELL**, Petitioner–Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent–Appellee.

No. 94–70509.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1996.

Decided July 25, 1996.

Bruce I. Hochman, Charles P. Rettig, and Joanna Tulio, Hochman, Salkin & DeRoy, Beverly Hills, California, for petitioner-appellant.

Sara S. Holderness, Tax Division, United States Department of Justice, Washington, D.C., for respondent-appellee.

Before: WALLACE and T.G. NELSON, Circuit Judges, and WILLIAM D. BROWNING,[1] District Judge.

WILLIAM D. BROWNING, District Judge:

## I.

In 1987, Margaret Wiksell signed two joint tax returns for the years 1984 and 1985, both of which omitted substantial ill-gotten income generated by her (now ex) husband's illicit business. Margaret Wiksell claims to have known nothing about most of the money taken nor anything about the scam that generated the funds. On March 7, 1991, a notice of deficiency was issued to the Wiksells for tax years 1984 and 1985. The couple challenged the deficiency and, following a trial at which only Margaret attended, the tax court denied both taxpayers relief. *Wiksell v. Commissioner*, 67 T.C.M. 2360 (1994). This timely appeal followed and concerns only Margaret Wiksell ("Appellant") in which she challenges the tax court's determination that she was not an "innocent spouse" pursuant to 26 U.S.C. § 6013(e).

We have jurisdiction pursuant to 26 U.S.C. § 7482 and remand so that the tax court can apply innocent spouse relief to that portion of the deficiency so deserving. The pertinent facts, most of which were stipulated, follow.

## II.

Appellant was married in 1960, legally separated in 1988, and divorced in 1992. The

---

1. Honorable William D. Browning, United States District Judge for the District of Arizona, sitting by designation.

couple had three children, although the middle daughter unexpectedly died in 1984. The marriage was anything but harmonious. Evidence adduced at trial showed that Appellant's husband was domineering and abusive and, because of the relationship, Appellant would "go along" with anything that her husband expected.

During the course of their marriage, Appellant's husband was engaged in several occupations, most of which were not lucrative. Indeed, in his pursuit of money, Appellant's husband had gotten into trouble with the law. Thus, the record shows that the family often had a difficult time making ends meet. In the early 1980s, however, things changed. In 1983, Appellant's husband started his own company "High Tech Recovery Systems" and, in 1984, he began working at Comstock Financial as an investment advisor later becoming an officer and vice president at that firm. It was clear to Appellant that at least Comstock was "doing very good business."

Appellant had nothing to do with her husband's actual business affairs. Although her husband at various times worked out of their home, he opened his own mail and kept any business documents in a locked file cabinet unaccessible to Appellant. Any attempts by Appellant to pry into the particulars of business matters risked her husband "flying into a rage." Appellant nevertheless received large sums of money which she deposited in her own checking accounts. Specifically, in 1984, Appellant deposited approximately $54,500 and, in 1985, approximately $140,500.

Appellant testified that at least part of the money received and deposited was used to pay past business debts, although some the family's living expenses were paid from these funds as well. Despite the fact that the account was in Appellant's name, most check-writing was directed and controlled by her husband. Apparently, out of the money deposited in Appellant's account, over $25,000 was given to various charities, some $2800 was donated to a political campaign, and over $20,000 was spent on home repairs and furniture. Additionally, certain real property interests were acquired.

Sometime in 1985 an investigation of Mr. Wiksell's business was initiated. Appellant learned that a temporary restraining order prevented her husband from soliciting further investments and her husband's deposition was taken as well. Appellant also read an article that purportedly explained the scam in which her husband was involved and also noted that two million dollars were at issue. Eventually, Appellant's husband was arrested, pled guilty to criminal charges, and imprisoned.

Appellant's 1984 joint tax return stated that the couple earned $10,525 and her 1985 joint tax return stated that they earned only $4,298. In reality, as a result of her husband's misdeeds, over two million dollars were earned in 1984 and 1985. Although both returns were prepared by a third party, the circumstances surrounding their preparation and their signing are unclear. The tax deficiencies assessed as a result of the unreported income, the amounts of which are not disputed, are $221,294 for 1984 and $789,919 for 1985.

## III.

### A. Standard of Review.

■ The Court of Appeals reviews the tax court's decision to grant relief pursuant 26 U.S.C. 6013(e) under a clear error standard. *Guth v. C.I.R.*, 897 F.2d 441, 443 (9th Cir. 1990).

### B. Analysis.

■ Generally, marital partners who file a joint return are jointly and severally liable for its accuracy and any assessments due. *See Guth*, 897 F.2d at 442, 26 U.S.C. § 6013(d)(3). There is, however, an exception for an "innocent spouse." *Guth*, 897 F.2d at 442–43, 26 U.S.C. § 6013(e) To qualify, the spouse seeking relief must show: (1) that a joint return was made; (2) that on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse; (3) that in signing the return the innocent spouse did not know, and had no reason to know, that there was such substantial understatement; and (4) taking into account all the facts and circumstances,

it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement. 26 U.S.C. § 6013(e)(1). When these four elements have been demonstrated, the innocent spouse is "relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement." *Id.*

At issue here are elements three and four. As to the third, the tax court found that Appellant had actual knowledge of the substantial understatement and had reason to know of it as well; and as to the fourth, the tax court found that it was not inequitable to hold her responsible for the taxes due. Because the tax court did not clearly err in finding that Appellant at least had reason to know of a substantial understatement, and because Appellant has the burden of proving all four elements of the section, *Price v. C.I.R.*, 887 F.2d 959, 962 (9th Cir.1989), we need not go further than the tax court's finding on constructive knowledge.

■■■ 1. *Constructive Knowledge.* In assessing whether Appellant had "reason to know" of a substantial understatement, a court must determine whether "a reasonably prudent taxpayer in [Appellant's] position at the time she signed the return could be expected to know that the return contained the substantial understatement." *Guth,* 897 F.2d at 443–44 (quotations omitted). The test ultimately is subjective and looks at such factors as Appellant's education, involvement in financial affairs, the evasiveness or deceit of the culpable spouse, and unusual or lavish expenditures inconsistent with the family's ordinary standard of living. *Id.* at 444; *see also Pietromonaco v. C.I.R.*, 3 F.3d 1342, 1345 (9th Cir.1993).

Here, even assuming Appellant's lack of involvement and lack of financial proficiency, the evasiveness and questionable background of Appellant's husband together with the substantial cash on hand, the small sums reported, and the unusual expenditures for the years at issue, support the tax court's conclusion. Although Appellant argues that their standard of living was not lavish, she admitted that the large cash donations during the years in question were "odd to say the least."

Appellant contends, nevertheless, that because the money given to her was being used, at least in part, for business expenses, the presence of such money was not necessarily linked to the family's income. This ignores that Appellant also spent substantial sums of money on non-business related matters. Additionally, unlike the years prior to 1984, there was no need for Appellant to work a great deal and there were no problems paying the bills. Appellant also knew the company for which her husband was working was successful and that her husband, who was rewarded with an Hawaiian vacation, likewise was doing well. Finally, there was no adequate explanation of how the couple acquired the real property interests, assuming they were acquired during the relevant period.

Appellant also argues that duress in the couple's relationship and her personal problems (e.g. her daughter's death) account for her lack of perception. *See, e.g., Sanders v. United States,* 509 F.2d 162, 169 (5th Cir. 1975). We do not understand Appellant's argument to be that her will was overcome at the time she signed the returns, *see Furnish v. Commissioner,* 262 F.2d 727 (9th Cir. 1958), but rather that the duress explains why she had no opportunity to gain knowledge about her husband's business affairs and why she had no reason to know of the unreported income. We reject this argument.

Whatever tragedy and duress Appellant faced, they did not significantly cloud her perception. When asked whether she questioned her husband "as to why there was no income on the returns reflecting the money that [Appellant] had been living off of and money that [Appellant] had been given," she testified:

> Yeah, I think I did ask him what about the money—what about the money, and he gave me such a *bizarre explanation* that I don't think I could even repeat it, I mean what he told me.

\* \* \* \* \* \*

It was something along the fact that it had been investment—that he had investments in High Tech that had been lost and this was return, or something along those lines *... it just didn't make sense to me ....*

(emphasis added). Thus, Appellant at the very least knew something was awry, but refused to go further. From the record, it is unclear whether she claimed to believe her husband's concocted story and, in fact, according to Appellant, it didn't matter because she "wouldn't have contradicted what he was telling [her]." In any event, to the extent that Appellant claims that she believed his explanation, the tax court logically could reject this, considering the extremely small sums reported, the evidence of excessive spending, and the large sums of money on hand.[2]

In short, the evidence of an understatement was overwhelming and Appellant cannot hide from its importance. Because Appellant had *reason to know* of an understatement, there was no clear error.

■ 2. *Apportionment*. While it is true that Appellant had reason to know of a substantial understatement, there is much less to indicate that she should have known of the magnitude of the understatement generated by her husband's activities. Appellant therefore argues that because the record demonstrates her innocence as to most of the understatement, the tax court should have afforded her innocent spouse relief to that portion so deserving. It is unclear, however, whether this apportionment argument was raised below. Nevertheless, in extraordinary circumstances to prevent injustice, this court may consider arguments not properly preserved. *See Ratanasen v. California Dep't of Health Services,* 11 F.3d 1467, 1473 (9th Cir.1993). Assuming that the issue was not raised, we find that the circumstances risk manifest injustice and warrant appellate review.

Admittedly, the text of the innocent spouse statute does not expressly provide for apportionment. However, neither does the statute forbid it. Indeed, relief of tax liability under the statute is afforded "*to the extent* such liability is attributable to such substantial understatement," 26 U.S.C. § 6013(e) (emphasis added), suggesting that an understatement may be partially deserving of innocent spouse relief. Other courts have, in fact, employed apportionment principles in applying innocent spouse relief. *See, e.g., Ratana v. C.I.R.,* 662 F.2d 220, 224–25 (4th Cir.1981); *Ballard v. C.I.R.,* 740 F.2d 659, 665 n. 2 (8th Cir.1984); *Bell v. C.I.R.,* 56 T.C.M. 1467 (1989); *Jenkins v. C.I.R.,* 55 T.C.M. 1354 (1988).

Application of the statute without apportionment, moreover, potentially generates inequitable results. For example, relief might be wholly lost if culpability can be shown even as to a minute portion of the understatement. This court has recently observed certain inequities if the innocent spouse statute were literally applied. In deciding that a deduction could be parceled out when assessing whether it was grossly erroneous, this court noted:

> [a] rule such as the tax court's would give the Commissioner carte blanche to by-pass the innocent-spouse exception in virtually every case. Theoretically, even if only one dollar of a deduction were allowed and one million dollars were not allowed, the entire deduction would be disqualified under the innocent-spouse exception, because one could not fragment a deduction into two parts.

*Ness v. C.I.R.,* 954 F.2d 1495, 1499 (9th Cir. 1992). The same concerns are present here.

■ In light of the equities involved, and faced with no compelling reason why the statute cannot be so interpreted, we find that apportionment is proper. *See Guth,* 897 F.2d at 443 (noting that the legislative history indicated that the innocent spouse statute was designed "to bring government tax col-

---

2. The Eleventh Circuit has held that spousal abuse, both mental and physical, can reach a point so as to provide an adequate explanation for deference to the offending spouse even if it does not rise to the level of coercion. *Kistner v. C.I.R.,* 18 F.3d 1521, 1526 (11th Cir.1994). Here, at least as to the monies described, it is clear that any abuse does not provide an adequate explanation. In light of our resolution—remanding the case to allow the tax court to apportion relief—we need not reach the issue as to the remaining funds.

lection practices into accord with basic principles of equity and fairness"). Where, as here, a taxpayer can potentially demonstrate innocence as to a portion of the substantial understatement at issue, he or she ought to be able to attempt to do this. In this case, there is very little to show that Appellant knew—or had reason to know—of much of the understatement. Although Appellant received some $200,000 in funds and acquired some real property interests (the value of which is not before us), there is virtually nothing in the record which shows that Appellant had knowledge—actual or otherwise—of much of what was going on in her husband's business and of the funds generated from those secreted events. It is true that Appellant read a newspaper article which apparently stated that $2,000,000 was at issue. Hyperbole in a newspaper story, however, is not uncommon and, in any event, without other evidence that so much money was personally diverted, Appellant could reasonably disbelieve the account. Finally, we reject the importance that the tax court placed on Appellant's late access to her husband's business papers, presumably while he was in jail. It is unclear whether the papers could even be understood in such a way to alert Appellant to the proportions of what was at issue.

Because there is a significant void in the evidence which links Appellant to much, if not the majority, of the understatement and its related tax deficiency, apportionment indeed seems fitting. We will remand the case and allow the tax court to reevaluate its decision, with the knowledge that apportionment is both available and proper in this case.[3] The tax court should determine what portion, if any, of the deficiency is subject to innocent spouse relief.

## IV.

Apportionment under the innocent spouse doctrine, 26 U.S.C. § 6013(e), is available and proper in this case. The tax court decided the case on an all-or-nothing basis. Accordingly, judgment against Appellant and for Appellee is REVERSED, and the case is REMANDED to the tax court for redetermination applying the apportionment principles announced in this opinion.

WALLACE, Circuit Judge, concurring and dissenting:

Although I agree with the majority that the tax court did not abuse its discretion in finding that Mrs. Wiksell had reason to know of the substantial understatements of income, I cannot agree with its decision to remand this case to the tax court for further findings concerning apportionment.

The majority states that it is unclear whether Mrs. Wiksell argued before the tax court that she should not be held liable for the entirety of the tax deficiency resulting from the substantial understatements in taxable income. Maj. op. at 1463. I do not see the lack of clarity. It was her responsibility to show she raised the issue; she failed to do so. That should end the matter.

Undaunted, the majority proceeds to consider de novo whether there is sufficient evidence to indicate that Mrs. Wiksell did not have reason to know of "the magnitude of the understatement generated by her husband's activities." *Id.* Regardless whether Mrs. Wiksell presented the apportionment argument below, the tax court found that she had reason to know of the substantial understatements. This finding applies to *all* of the understatements and is not clearly erroneous. As she had reason to know of all substantial underpayments, there could be no lesser amount for which she should receive relief. Mrs. Wiksell has not come close to carrying her burden of proving that she did not have reason to know of a portion of the understatements. The majority's analysis is completely inconsistent with the tax court's

---

**3.** We note that the tax court also found that it would not be inequitable to hold Appellant liable for the entire deficiency. This finding, if correct, normally would end the inquiry because Appellant must demonstrate all four elements of 26 U.S.C. § 6013(e) to be eligible for innocent spouse relief. The tax court's decision on this point, however, potentially was based on its misconception that it could not separate out that portion of tax liability attributable to innocence from that which was not. That is, it is not at all unlikely that faced with only innocent conduct, the tax court will find it inequitable to force repayment. 26 U.C.C. § 6013(e)(1)(D).

explicit finding, which was not clearly erroneous, that it was not inequitable to hold her responsible for all the taxes due. Clearly, the majority is attempting to find some reason to remand, but the route chosen leads only to a door already closed by the tax court's findings.

Although the cases cited by the majority support the proposition that apportionment may be appropriate in some cases, the majority does not support apportionment under the circumstances presented here. In *Ratana v. Commissioner*, 662 F.2d 220 (4th Cir. 1981), the court allowed apportionment of tax liability resulting from unreported income related to drug trafficking and tax fraud. *Id.* at 224–25. The court found that although Mrs. Ratana had actual knowledge of omitted income resulting from her husband's drug trafficking, she had no knowledge and no reason to know that her husband fraudulently underreported his salary earnings. *See id.* at 223–25. Thus, the court applied the innocent spouse exception only to the understated salary income.

The majority also cites *Bell v. Commissioner*, 56 T.C.M. (CCH) 1467 (1989), which recognizes only that a court may refuse to impose liability resulting from "innocent" understatements. In *Bell*, a spouse asserted immunity under 26 U.S.C. § 6013(e) as to specific items of income and specific deductions; however, she stipulated that she was not innocent as to other improper deductions and omitted income. The tax court found Mrs. Bell qualified for innocent spouse relief as to the former, but held her accountable for tax deficiencies resulting from the admittedly-known errors.

Neither *Bell* nor *Ratana* is applicable here because the understatements at issue are not attributable to various fraudulent activities of which Mrs. Wiksell had knowledge of some, but not others. The finding that binds us refers to all the fraudulent activities.

Finally, *Ballard v. Commissioner*, 740 F.2d 659 (8th Cir.1984) (*Ballard*), and *Jenkins v. Commissioner*, 55 T.C.M. (CCH) 1354 (1988), also cited by the majority, do not support apportionment in this case. *Ballard* held that Mrs. Ballard did not know and had no reason to know of her husband's omissions

in tax returns. *Ballard*, 740 F.2d at 665. In dicta, the court stated that even if Mrs. Ballard's endorsement of several checks to her husband's business put her on notice of omitted income, "that notice would be limited to the amount of those checks" because Mrs. Ballard had no reason to suspect additional unreported income. *Id.* at 665 n. 2. *Jenkins* never discussed apportionment with respect to section 6013(e). Rather, that decision addressed whether an innocent spouse was negligent with respect to any part of the underpayment of tax pursuant to 26 U.S.C. § 6653(a).

Considered together, the above cases suggest that where an understatement results from unreported income derived from illicit activities, apportionment turns on whether the allegedly innocent spouse had reason to know of the income-producing activity underlying the omitted income. Here, Mrs. Wiksell had reason to know of all such activity, and, therefore, apportionment is not available. *See McGee v. Commissioner*, 979 F.2d 66, 70 (5th Cir.1992) (under 26 U.S.C. § 66(c), knowledge of omitted income determined with reference to knowledge of income-producing activity, not the amount of income produced); *Price v. Commissioner*, 887 F.2d 959, 963 n. 9 (9th Cir.1989) (spouse must show that she "did not know of the transaction underlying the [omission]" to qualify as "innocent spouse") (emphasis omitted); *Krause v. Commissioner*, 61 T.C.M. (CCH) 1670 (1991) (as long as spouse knew that husband embezzled some amount, she had reason to know that tax return contained substantial understatement). If a portion of the understatement had resulted from activities of which Mrs. Wiksell had no knowledge and no reason to know, it may be that section 6013(e) would not preclude her from claiming innocent spouse protection before the tax court as to the understatement resulting from that activity. But that is not the case before us.

As the majority recognizes, overwhelming evidence supports the tax court's finding that Mrs. Wiksell had reason to know of her husband's fraud. *See* maj. op. at 1462–63; *id.* at 1463 (summarizing evidence of constructive knowledge of understatement as

"overwhelming" and stating that "Appellant cannot hide from its importance or its magnitude"). Most telling is Mrs. Wiksell's confession that before she executed the tax returns, she read a *Los Angeles Times* article identifying her husband as a primary architect of an investment scam that defrauded unsuspecting investors out of millions of dollars. *See* James Bates, Southland Financiers Quoted Bible, Engaged in Scams, SEC Claims, L.A. Times, Mar. 3, 1986. The article states in part: "[T]he SEC alleges[] Comstock Financial placed at least $2 million of investors' funds in an oil firm run by Wiksell, its vice president of finance, out of his Van Nuys home." *Id.* When viewed in light of Mr. Wiksell's prior arrest for illegal trading and the fact that he had been arrested and was in jail for this scam at the time Mrs. Wiksell read the article, the article reveals more than "hyperbole," as the majority suggests. *See* maj. op. at 1464. Rather, this evidence indicates the magnitude of Mr. Wiksell's fraud and supports the tax court's factual finding that Mrs. Wiksell had reason to know of both her husband's illicit activity and the substantial understatements on their tax returns for 1984 and 1985. At the very least, this evidence demonstrates that the tax court's finding was not clearly erroneous.

I therefore conclude that there is no reason for a remand in this case. There is no showing that the apportionment issue was raised in the tax court—and it is easy to see why it would not be. Even if our law allowed such an apportionment, an issue I do not reach, the record is clear that it could not apply in this case.