T.C. Memo. 1998-5


UNITED STATES TAX COURT


LINDA S. DILLON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3453-90.                    Filed January 5, 1998.


<u>James S. Black, Jr.</u>, for petitioner.

<u>Gregory M. Hahn</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


FAY, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income taxes as follows:

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651 | Sec. 6653(a) | Sec. 6659 | Sec. 6661 |
| 1981 | $42,072.00 | $-0- | $2,104 | $2,280 | $-0- |
| 1982 | 79,606.42 | 7,960.64 | 10,470 | 5,434 | 15,373.11 |

All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

After concessions,[1] the issue for decision is whether petitioner qualifies for innocent spouse relief under section 6013(e) for taxable years 1981 and 1982.[2]

---

[1]The parties have stipulated that petitioner received, but did not report, $274 in interest income in 1982. Petitioner is not entitled to innocent spouse protection under sec. 6013(e) with respect to this income, and petitioner has stipulated that she is jointly and severally liable for the 1982 deficiency and additions to tax owing on the $274 of unreported income. Further, petitioner and Thomas Dillon's joint 1982 Federal income tax return was due on October 15, 1983, but it was not filed until November 21, 1983. Therefore, petitioner is liable for an addition to tax under sec. 6651(a)(1) for failure to timely file the 1982 tax return.

[2]The parties have stipulated that petitioner is liable for the following deficiency and additions to tax for taxable year 1981 if she is not an innocent spouse under sec. 6013(e): (1) There is a deficiency of $12,143 in Federal income tax; (2) there is no addition to tax under sec. 6653(a)(1) or (2); and (3) there is no addition to tax under sec. 6659. The parties have also stipulated that petitioner is liable for the following deficiency and additions to tax for taxable year 1982 if she is not an innocent spouse under sec. 6013(e): (1) There is a deficiency of $21,715 in Federal income tax; (2) there is a $2,171 addition to tax under sec. 6651(a)(1); (3) there is a $7,575 addition to tax under sec. 6653(a)(1)(A); (4) there is an addition to tax under sec. 6653(a)(1)(B) equal to 50 percent of the statutory interest due from April 15, 1983, to the date of assessment of tax or, if earlier, the date of payment; (5) there is no addition to tax due under sec. 6659; and (6) there is a $5,429 addition to tax under sec. 6661. The above stipulations for taxable year 1982 include the deficiency related to the $274 of omitted income and the addition to tax under sec. 6651(a)(1) for failure to timely file the return discussed in footnote 1.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in the State of Washington at the time the petition was filed.

Background

Petitioner and Thomas J. Dillon were married in 1963. During the marriage petitioner gave birth to two sons, Mark and Chris Dillon. The Dillons separated in 1984 and subsequently were divorced in 1987. Petitioner and Thomas Dillon filed joint Federal income tax returns for both 1981 and 1982.

Petitioner has a high school degree and completed one year of college at Brigham Young University. In addition, she has attended cosmetology school. Petitioner worked as a hairdresser the first year that she and Thomas Dillon were married. After the first child was born, however, petitioner stopped working as a hairdresser and stayed at home as a homemaker for the remainder of the marriage.

Mr. Dillon formed Dillon Securities, Inc., in the early 1970s. Dillon Securities, Inc. (Dillon Securities), is a corporation engaged in the stock brokerage business, specializing in small-cap, speculative stocks. During the years at issue, Thomas Dillon was a director, officer, and the sole shareholder of Dillon Securities. Additionally, Mr. Dillon, working as a trader for Dillon Securities, was actively involved in the stock trading

business. Petitioner worked part time at Dillon Securities during 1981 and 1982. Her responsibilities involved essentially pedestrian tasks, such as manually entering stock trades in the ledgers and ordering lunches.

Dillon Securities prospered during the years at issue, and this success is reflected in Mr. Dillon's salary. Specifically, Thomas Dillon's income from Dillon Securities was more than $1 million in 1981 and nearly $420,000 in 1982. This income allowed the Dillons to enjoy a high standard of living; for instance, the family lived in a home with a swimming pool. Further, the Dillons also owned a large number of "toys", including an airplane, a helicopter, 13 cars, a boat and several snowmobiles. Beginning in 1980, petitioner and Thomas Dillon spent approximately $900,000 to purchase 40 acres of land on Hangman Valley Road and built a house and barn on the property. Also, during the years at issue, petitioner went on several family vacations including two trips to Hawaii, one trip to Mexico, and at least two ski trips to Sun Valley.

Petitioner trusted Thomas Dillon. During the years at issue, Thomas Dillon generally handled the finances while petitioner took care of their two children. Thomas Dillon maintained a money market account (the Murphy Favre, Inc./Composite Cash Management Company account, hereinafter the Murphy Favre account), and statements of the activity in the Murphy Favre account were received by Thomas Dillon at Dillon Securities. All

of the duties with respect to the Dillon family's finances, including the reconciliation of the Murphy Favre account statements, were handled by Thomas Dillon or accounting personnel at Dillon Securities.  Although petitioner maintained a personal checking account at First Interstate Bank and had several credit cards, most of the family expenses were paid directly from accounts that were maintained by Thomas Dillon at Dillon Securities.  Whenever petitioner needed money for personal expenses, Thomas Dillon would transfer money into petitioner's checking account.

Thomas Dillon divorced petitioner on June 29, 1987.  Petitioner was awarded maintenance of $2,000 per month for 66 months beginning in June 1987.  There was an equitable distribution of the marital assets following the divorce.  Pursuant to this distribution, petitioner received the following assets:  The house, barn and 40 acres of land on Hangman Valley Road; real property located at South 5208 Perry Street; a 50 percent interest in commercial property located at West 525 Second Avenue; $207,779.66 held in a bank account at First Interstate Bank; one-half interest in the Dillon Securities profit sharing plan (valued at approximately $208,000); $70,000 in cash from Thomas Dillon (payable one year after the entry of the decree of dissolution or at the time the R-22 Alpha helicopter was sold, whichever occurred first); $52,750 in cash payable from the sale of certain stock held by Thomas Dillon at Dillon Securities (plus

one-half of any assets remaining in the account after payment of the $52,750); approximately $23,500 from a reserve account held in the name of Thomas Dillon at Dillon Securities; three automobiles (a 1978 SC 911 Targa Porsche, a 1981 Ford 250 4 x 4 truck, and a 1985 Chevrolet S-10 Blazer); a 1977 boat and trailer; and miscellaneous other assets as identified in the property settlement agreement.

At the time of the dissolution proceedings, petitioner was aware that the IRS was investigating certain items reported on petitioner and Thomas Dillon's 1981-1985 Federal income tax returns. Petitioner negotiated an indemnification clause in the property settlement agreement to cover any income taxes due for the years prior to 1987. Pursuant to this clause, Thomas Dillon is responsible for any income tax liabilities related to the years prior to 1987.

Petitioner's income has dropped considerably since the divorce. In her 1994 Federal income tax return, petitioner reported adjusted gross income of $12,739.

Thomas Dillon's Investments

In 1981, Thomas Dillon invested approximately $150,000 in a partnership called Supertaps Associates (Supertaps). Supertaps was a partnership involved with the production and syndication of two movies, "Superman III" and "Taps". Thomas Dillon sought investment advice from his accounting firm, Touche Ross & Company (Touche Ross), prior to investing in Supertaps. The Dillons'

accountant at Touche Ross, after reviewing the financial package concerning the investment in Supertaps, did not express any objections relating to the investment. Petitioner attended the meeting in 1981 in which Thomas Dillon and the accountant from Touche Ross discussed the investment in Supertaps. In their 1981, 1982, and 1983 Federal income tax returns, petitioner and Thomas Dillon reported losses from this investment of $77,739, $115,782, and $107,104, respectively. However, in 1985 petitioner and Thomas Dillon reported partnership income of $128,924.

During 1981 and 1982, Thomas Dillon maintained a money market account with Murphy Favre. The statements were received by Thomas Dillon at Dillon Securities, and petitioner was not listed as a signatory on the account. The balance in the account varied between $600,000 and $800,000. In 1981, petitioner and Thomas Dillon reported income from this account of $22,517. In 1982, the Dillons earned $43,158 in income from this account, but this income was mistakenly omitted from their 1982 Federal income tax return.

Petitioner and Thomas Dillon's 1981 Federal income tax return was prepared by accountants at Touche Ross. Petitioner and Thomas Dillon attended a meeting at Touche Ross to review and sign their return. The accountants at Touche Ross discussed ways in which the Dillons could reduce their Federal income tax liabilities. Petitioner did not review the return before signing

it.  In general, petitioner trusted Thomas Dillon and his handling of the family finances.

On November 20, 1989, respondent issued a notice of deficiency to petitioner and Thomas Dillon.  In the notice of deficiency, respondent disallowed the loss from Supertaps of $77,739 which had been deducted by the Dillons in 1981.  Further, respondent determined that the Dillons had failed to report $43,158 of income earned on their Murphy Favre account in 1982.

Petitioner and Thomas Dillon entered into nearly identical closing agreements with the Internal Revenue Service concerning the investment in Supertaps.  Thomas Dillon's closing agreement contains the same financial terms as petitioner's, except that his agreement does not contain an "innocent spouse" provision. Under the terms of these agreements, petitioner is entitled to losses in connection with Supertaps in the amount of $300,625, which had been previously deducted on the Dillons' 1981, 1982, and 1983 joint Federal income tax returns.

Further, under these agreements, there is no Federal income tax deficiency for the taxable years 1982 through 1985 relating to the Supertaps investment.  In the event petitioner is not found to be an innocent spouse, then petitioner is liable for a $12,143 deficiency for 1981, and petitioner must also report $114,076 in income from Supertaps on her 1986 Federal income tax return, or on the next open Federal income tax return.

OPINION

Generally, spouses who file joint tax returns are jointly and severally liable for Federal income tax due on their combined incomes. Sec. 6013(d)(3); Guth v. Commissioner, 897 F.2d 441, 442 (9th Cir. 1990), affg. T.C. Memo. 1987-522. However, pursuant to section 6013(e)(3), an "innocent spouse" can be relieved of tax liability.

For petitioner to qualify as an innocent spouse, she must establish: (1) A joint return was filed for each year in issue; (2) there were substantial understatements of tax attributable to grossly erroneous items of her spouse in the return; (3) in signing the returns, she did not know or have reason to know of the substantial understatements; and (4) taking into account all the facts and circumstances, it would be inequitable to hold her liable for the deficiencies and additions to tax. Sec. 6013(e)(1)(A) through (D); Guth v. Commissioner, supra at 443. Petitioner has the burden of proving each element of section 6013(e) by a preponderance of the evidence. Rule 142(a). Since the elements are conjunctive, the failure to prove any one of the elements will preclude petitioner from receiving relief. Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63.

Respondent concedes that a joint return was filed for each of the years in issue, and thus the first element is not in

dispute. Further, the parties have stipulated that the $43,158 of income that was omitted from the 1982 Federal income tax return is a grossly erroneous item. Therefore, the issues for decision are: (1) Whether the understatement of income for the taxable year 1981 from the Supertaps loss deduction is a "grossly erroneous item," as defined by section 6013(e)(2)(B), attributable solely to Thomas Dillon, and whether the omission of income from the 1982 Federal income tax return is attributable solely to Thomas Dillon; (2) whether petitioner, in signing the 1981 and 1982 Federal income tax returns, did not know or have reason to know of the substantial understatement of tax in 1981 which resulted from the Supertaps deduction or the substantial understatement of tax in 1982 which resulted from the failure to report income from the Murphy Favre account; (3) whether it would be inequitable to hold petitioner liable for the deficiencies in income tax for 1981 and 1982 attributable to the substantial understatements.

The 1981 Disallowed Loss Deduction for Supertaps

Petitioner contends that she is entitled to innocent spouse relief with respect to the 1981 deficiency arising from the Supertaps investment. In order to prevail, petitioner must prove: (1) That the substantial understatement is a grossly erroneous item; (2) that the substantial understatement is attributable solely to Thomas Dillon; (3) that petitioner did not

know or have reason to know of the understatement of tax at the time she signed the return; and (4) that it would be inequitable to hold petitioner liable for the deficiency resulting from this understatement.  Respondent asserts that petitioner has failed to prove each of these items.

Respondent contends that the loss deduction does not constitute a grossly erroneous item.  The Internal Revenue Code defines a "grossly erroneous" deduction as one having no basis in fact or law at the time the income tax return is filed.  Sec. 6013(e)(2).  A deduction has no basis in fact when the expense for which the deduction is claimed was never, in fact, made.  Douglas v. Commissioner, 86 T.C. 758, 762 (1986).  A deduction has no basis in law when the expense, even if made, does not qualify as a deductible expense under well-settled legal principles or when no substantial legal argument can be made to support its deductibility.  Id.  Ordinarily, a deduction having no basis in fact or in law may be described as frivolous, fraudulent, or phony.  Bokum v. Commissioner, 992 F.2d 1136, 1142 (11th Cir. 1993), affg. T.C. Memo. 1990-21.

The taxpayer has the burden of proving that the deduction is grossly erroneous.  Rule 142(a).  The taxpayer cannot meet this burden merely by relying on statements contained in the notice of deficiency, the report of the revenue agent, or the report of the Appeals officer that the partnership investment is a sham, lacks

economic substance, or lacks a profit motive. Douglas v. Commissioner, 86 T.C. at 762; Michaels v. Commissioner, T.C. Memo. 1995-294.

We may consider the terms of a stipulated settlement in determining whether partnership losses are grossly erroneous. However, we do not draw an inference that the partnership losses are grossly erroneous where the stipulation is silent as to whether the partnership transaction was a sham. Michaels v. Commissioner, supra.

Petitioner asserts that Thomas Dillon invested in Supertaps merely to obtain tax losses and not to obtain a positive return on the investment. Therefore, petitioner concludes that the loss deductions from Supertaps do not qualify as deductible expenses under well-settled legal principles, and there is no basis in law for the allowance of the loss deductions.

Sham transactions are not given effect for Federal income tax purposes, Frank Lyon Co. v. United States, 435 U.S. 561, 573 (1978), and the resulting deductions are phony and without basis in fact or law. In this regard, petitioner has the burden of producing evidence concerning the sham nature of the underlying transaction and the lack of profit motive on the part of the entity and its principals. Here, petitioner must establish that, at the partnership level, Supertaps was a sham transaction without a profit motive. Hulter v. Commissioner, 91 T.C. 371, 393

(1988). The record contains no evidence of the organization, operations, or business plan of Supertaps. Petitioner did not put on any evidence of the activities and motives of the Supertaps partnership. Without such evidence, it cannot be determined whether petitioner and her husband lacked any legal basis for deducting the Supertaps losses. See Kaye v. Commissioner, T.C. Memo. 1995-345. Therefore, despite petitioner's assertions to the contrary, we conclude that petitioner has not proven that there was no basis in fact or in law for deducting the 1981 loss in connection with the investment in Supertaps. Accordingly, we find that petitioner has not carried her burden in proving that the deduction is grossly erroneous.

The 1982 Understatement From Unreported Income

Petitioner also contends that she is entitled to innocent spouse relief with respect to the 1982 deficiency arising from $43,158 of unreported income earned on the Murphy Favre account. Respondent has conceded that this is a grossly erroneous item. Therefore, in order to prevail, petitioner must prove: (1) That the substantial understatement is attributable solely to Thomas Dillon; (2) that petitioner did not know or have reason to know of the understatement of tax at the time she signed the return; and (3) that it would be inequitable to hold petitioner liable for the deficiency resulting from this understatement. Respondent asserts that petitioner has failed to prove each of these

items.  As more fully explained infra, we conclude that peti-
tioner has successfully demonstrated that she is entitled to
innocent spouse relief with respect to this item.

First, the facts in the record amply demonstrate that the
omission is attributable solely to Thomas Dillon.  Mr. Dillon
handled the Dillon family finances and maintained all the records
in the offices at Dillon Securities.  It is Mr. Dillon who
possessed the knowledge and information necessary to complete the
return, and the record is clear that Mr. Dillon alone was
responsible for working with the accountants in preparing the
return.  Accordingly, the failure to include income from this
account can be attributed solely to him.

Second, petitioner did not have actual or constructive
knowledge of the substantial understatement of tax.  In cases
involving the omission of income, actual or constructive
knowledge of the underlying transaction giving rise to omitted
income is sufficient to preclude innocent spouse relief.  Wiksell
v. Commissioner, 90 F.3d 1459 (9th Cir. 1996), revg. and remand-
ing T.C. Memo. 1994-99; Price v. Commissioner, T.C. Memo. 1987-
360.

Petitioner argues that she did not have actual or construc-
tive knowledge of the Murphy Favre account.  Petitioner points to
the fact that all of the family finances were handled by Thomas
Dillon or employees of Dillon Securities, and all account state-

ments and other financial information relating to this account were received by Thomas Dillon at Dillon Securities. Petitioner admits that she did not review the 1982 Federal income tax return but maintains that, even if she had, because she did not know of the existence of the Murphy Favre account, she would not have noticed that income from this account was not reported on the return.

Respondent, on the other hand, points out that the account at Murphy Favre was listed in the 1981 Federal income tax return. Petitioner testified that Thomas Dillon always had enough money at Dillon Securities to pay her credit card bills and provide her with money to spend. Although petitioner was generally aware that their tax bill for 1981 was high (the Dillons paid nearly $250,000 in June 1982) she also believed that Thomas Dillon had enough money in various accounts at Dillon Securities to pay their tax liability. Respondent claims that this is sufficient evidence of actual knowledge of the account on the part of petitioner. Further, respondent notes that Thomas Dillon never deceived petitioner or refused to discuss the family finances with her.

Despite the fact that the Murphy Favre account was listed in the Dillons' 1981 Federal income tax return, we find that petitioner did not have actual knowledge concerning the existence of the account. Petitioner has credibly testified that she did not

review the tax returns before signing them. Further, all of the account statements were handled by Thomas Dillon at Dillon Securities. We find that the record supports petitioner's contention that she lacked actual knowledge of this account.

Further, we refuse to impute constructive knowledge of this account to petitioner. Respondent has cited a number of cases wherein a taxpayer either had reason to know about a substantial understatement or had sufficient knowledge such that the taxpayer was put on notice that an understatement existed. See Hayman v. Commissioner, 992 F.2d 1256 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Stevens v. Commissioner, 872 F.2d 1499 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Zimmerman v. Commissioner, T.C. Memo. 1996-223; Kenney v. Commissioner, T.C. Memo. 1995-431. These cases are all distinguishable from the case at bar. The taxpayers in Hayman and Stevens, supra, were charged with constructive knowledge of deductions listed in their tax returns. However, in those cases, even a cursory review of the return would have revealed the existence of substantial deductions. Here, the understatement results from the omission of a relatively small amount of investment income. Petitioner, given her limited knowledge and lack of education, would not have noticed anything amiss by simply reviewing the return.

Kenney v. Commissioner, supra, and Zimmerman v. Commissioner, supra, involved situations where income had been omitted

from the taxpayers' returns. However, even a cursory review of the returns would have revealed a negligible amount of income being reported in comparison to the amount of money received by the taxpayers during the years in question. See Kenney v. Commissioner, supra ("Given the fact that the subject returns reported no taxable income, one need only glance at the bottom line to see that further inquiry was warranted"); Zimmerman v. Commissioner, supra ("The total amount of income reported each year was minuscule compared to the amount of money flowing into * * * [the taxpayers] household account"). Here, in contrast, the $43,158 of omitted income was modest in comparison to the $425,214 of business and interest income that was reported for 1982. Further, the Dillons reported $38,484 of interest income in 1982, significantly more than the $26,172 reported in 1981. As a result, petitioner would not have been put on notice that something was wrong with the return by simply reviewing it. Accordingly, we shall not impute constructive knowledge of this omission to petitioner. See Terzian v. Commissioner, 72 T.C. 1164, 1171 (1979). Therefore we find that petitioner did not have actual or constructive knowledge of the omission.

Third, it would be inequitable to hold petitioner liable for the 1982 understatements. Sec. 6013(e)(1)(D); sec. 1.6013-5(b), Income Tax Regs. Section 6013(e) as amended no longer requires us to determine whether a spouse significantly benefited from the

erroneous item; however, this factor is still considered in determining whether it is inequitable to hold a spouse liable. Belk v. Commissioner, 93 T.C. 434, 440 (1989); Purcell v. Commissioner, 86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Normal support is not a significant benefit for purposes of determining whether denial of innocent spouse relief would be inequitable under section 6013(e)(1)(D). Estate of Krock v. Commissioner, 93 T.C. 672, 678 (1989); Terzian v. Commissioner, supra at 1172; sec. 1.6013-5(b), Income Tax Regs. Normal support is measured by the circumstances of the taxpayers. See Sanders v. United States, 509 F.2d 162, 168 (5th Cir. 1975).

Petitioner notes that she and Thomas Dillon enjoyed a high standard of living that was consistent with Mr. Dillon's level of earned income, and, therefore, the tax savings did not produce a benefit beyond their normal level of support. In fact, the tax savings of $21,579 in 1982 were negligible in comparison to Mr. Dillon's reported income of more than $425,000.

Another factor to consider is the 1987 divorce between petitioner and Mr. Dillon. Flynn v. Commissioner, 93 T.C. 355, 367 (1989); sec. 1.6013-5(b), Income Tax Regs. The Dillons had acquired numerous assets due to Thomas Dillon's success at Dillon Securities; these assets were distributed evenly in the divorce. Given the Dillons' relatively high standard of living during their marriage, their divorce settlement is well within the

bounds of normal support. See, e.g., <u>Foley v. Commissioner</u>, T.C. Memo. 1995-16.

In evaluating the equity holding a spouse liable under section 6013(e), we also consider the probable future hardship on the spouse seeking relief if that spouse is required to pay the tax. <u>Sanders v. United States</u>, 509 F.2d at 171 n.16; <u>Makalintal v. Commissioner</u>, T.C. Memo. 1996-9. The evidence before the Court indicates that there will be substantial hardships if we deny relief in this case. Petitioner's standard of living has decreased significantly from the time of the divorce. In 1994, petitioner reported adjusted gross income of less than $13,000. Further, petitioner has periodically received financial assistance from her elder son. Respondent points out that petitioner received substantial assets in the divorce. However, the property located at Hangman Valley Road, by far the most significant asset petitioner received in the divorce, was sold in 1989 for barely more than 50 percent of its assigned value in the property settlement agreement.

Nonetheless, respondent argues that it would not be inequitable to hold petitioner liable because, under the property settlement agreement incident to the divorce, Thomas Dillon indemnified petitioner against any losses resulting from tax liabilities arising from returns filed prior to 1987. The record indicates, however, that Mr. Dillon does not have the money to

pay the tax liabilities in question. Given this fact, it is highly unlikely that Mr. Dillon will be able to make good on his promise to reimburse petitioner if she is required to pay the tax liability, penalties, and interest related to the 1982 deficiency.

Accordingly, we find, based on the evidence, that it would be inequitable to hold petitioner liable for the 1982 deficiency. We therefore conclude that she is entitled to innocent spouse relief with respect to the deficiency and additions to tax which resulted from Thomas Dillon's failure to report, in the Dillons' 1982 Federal income tax return, the investment income earned from the Murphy Favre account.

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.