T.C. Memo. 1998-3


UNITED STATES TAX COURT


DAVID L. WIKSELL AND MARGARET ANN CARPENDER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket No. 11752-91.                    Filed January 5, 1998.



On remand from the United States Court of Appeals
for the Ninth Circuit, <u>Held</u>:  Innocent spouse relief
apportioned as to grossly erroneous items attributable
to delinquent spouse.  Sec. 6013(e)(1), I.R.C.; <u>Wiksell
v. Commissioner</u>, 90 F.3d 1459 (9th Cir. 1996), revg.
and remanding T.C. Memo. 1994-99, followed and applied.



<u>Bruce I. Hochman</u>, for petitioner Margaret Ann Carpender.

<u>Steven M. Roth</u>, for respondent.

---

[*]  This opinion supplements our opinion in <u>Wiksell v.
Commissioner</u>, T.C. Memo. 1994-99, revd. and remanded 90 F.3d 1459
(9th Cir. 1996).

SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge:  This case is before the Court on remand from the Court of Appeals for the Ninth Circuit.  Wiksell v. Commissioner, 90 F.3d 1459 (9th Cir. 1996), revg. and remanding T.C. Memo. 1994-99.

Respondent has conceded all additions to tax as to petitioner Margaret Ann Carpender (petitioner or Margaret). Margaret has conceded that deficiencies in the amounts of $221,294 and $789,919 asserted in respondent's amended answer for taxable years 1984 and 1985, respectively, are correct.

All section references are to sections of the Internal Revenue Code in effect for the years in issue, unless otherwise indicated.  All Rule references are to the Tax Court Rules of Practice and Procedure.

In Wiksell v. Commissioner, T.C. Memo. 1994-99, an order of dismissal and decision was entered against petitioner David L. Wiksell (David) by reason of his default.  David did not file an appeal.  The caption herein has not been changed to reflect this fact since David and Margaret jointly filed the petition.

On appeal, petitioner challenged our determination that she was not an innocent spouse within the meaning of section 6013(e). The Court of Appeals for the Ninth Circuit held that "Because there is a significant void in the evidence which links Appellant to much, if not the majority, of the understatement and its

related tax deficiency", the case would be remanded to this Court to "determine what portion, if any, of the deficiency is subject to innocent spouse relief." Wiksell v. Commissioner, supra at 1464.

By Order dated April 15, 1997, we granted petitioner's Motion to Change Caption. The amended caption of this case reflects the fact that Margaret's name was legally changed after her divorce from David. A further trial was held in the remanded matter.

The sole issue for decision is whether petitioner qualifies for innocent spouse relief pursuant to section 6013(e) with respect to any portion of the deficiencies asserted in respondent's amended answer for taxable years 1984 and 1985.

Petitioner resided in Newhall, California, when the petition was filed.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. We adopt in full the findings of fact in our prior memorandum opinion. For convenience, we shall repeat the facts as necessary to clarify the ensuing discussion, and we make additional findings of fact.

David and Margaret were married in 1960, legally separated in 1988, and divorced in December, 1992. They had three

children. Throughout much of their marriage Margaret and David endured a near poverty level existence.

Sometime in 1982 or 1983 David started his own company, Hitech Recovery Systems, Inc. (Hitech). David told Margaret that Hitech was to engage in the extraction of oil from old oil wells.

Sometime before the spring of 1984, David began working as a real estate investment adviser for Comstock Financial Services, Inc. (Comstock Financial), an insurance agency owned and operated by Roy L. Comstock (Roy Comstock). In the spring of 1984, David became a corporate officer and vice president of Comstock Financial, positions which he held through the fall of 1985. During the spring of 1984, David told Margaret that Comstock Financial was investing in Hitech.

During the years in issue, and throughout most of her marriage, petitioner did not share a joint checking account with David due to his propensity for bouncing checks. Rather, Margaret maintained her own separate checking accounts at Security Pacific National Bank (Security Pacific) and Santa Clarita Bank.

During 1984 and 1985, David maintained a business checking account under the name of Hitech at Security Pacific. Petitioner was aware that both her husband and a business associate, Thane Wilson, were signatories on this account; she, however, was not. David periodically gave petitioner checks drawn on the Hitech account and made payable to "Margaret Wiksell", which she

deposited into her two personal checking accounts. In 1984, Margaret was given 23 checks from Hitech totaling $54,500 from funds that Hitech had obtained from Comstock Financial. In 1985, Margaret received 15 Hitech checks totaling $140,500 from funds that Hitech had obtained from Comstock Financial.

In 1984 and 1985 Margaret wrote checks on her accounts totaling $78,781.38 and $149,444.32, respectively. Among other things, these checks were for clothes for Margaret and her daughters; loans to one daughter; charitable and political contributions; entertainment and gifts; home furnishings; home repair and maintenance; credit card payments; mortgage payments; and numerous other miscellaneous expenses.

Sometime in 1985 an investigation of David's business was initiated by the Securities and Exchange Commission (SEC). In October, 1985, David told Margaret that the SEC had recently issued a temporary restraining order against David and other employees of Comstock Financial to prevent them from soliciting further investment funds. Petitioner was also aware that her husband's deposition was taken by the SEC in November, 1985, in connection with activities that had gone on at Comstock Financial.

In January or February, 1987, David was arrested and charged with fraud in connection with a scam perpetrated by Roy Comstock, Abraham Boldt, and David, wherein it was alleged that at least $2 million, fraudulently obtained from unsuspecting investors in

Comstock Financial, was diverted to Hitech.  David was placed in county jail.

In September or October, 1987, David was released from county jail on bail.  On January 13, 1988, David pleaded guilty to various counts of fraud involving the sale of unregistered securities in connection with his participation in the fraudulent investment scheme involving Comstock Financial.  He was thereafter confined in a California state prison.

On their returns for 1984 and 1985, petitioners reported an adjusted gross income of $10,525 and $4,298, respectively, of which approximately $9,801 in 1984 and $1,760 in 1985 represented Margaret's wages from part-time nursing as reflected on Forms W-2, Wage and Tax Statement, issued to her.  Petitioners did not report any wages or income from Comstock Financial on their 1984 return; petitioners reported $2,538 in wages that David had received from Comstock Financial on their 1985 return.

During 1984, David received and retained $465,400 in illegally diverted funds from investors of Comstock Financial.  During 1985, David received and retained $1,572,018 in illegally diverted funds from such investors.  In addition, during 1984 and 1985 David received $3,898.68 and $63,128.23, respectively, from the sale of oil by Hitech to various oil-related companies which he deposited in Hitech's Security Pacific account.  In 1985, David also received $6,944 of interest income from a Merrill Lynch cash management account.  The record does not disclose that

Margaret was aware of the existence of these items at either the time David received them or when the 1984 and 1985 returns were filed. David and Margaret reported none of these amounts on their 1984 and 1985 returns.

While David was in county jail, and prior to Margaret's signing the 1984 and 1985 returns, he revealed to her the location of separate keys to unlock the file cabinets and briefcases where he kept his business records, in order for her to help him obtain release on bail. In the file cabinets and briefcases, Margaret found "stacks of papers" related to "everything David had been involved in for years." She also located David's business checkbook. Furthermore, each month throughout the period of her husband's incarceration in county jail, Margaret observed letters addressed to her husband or Hitech containing account statements from Security Pacific and Merrill Lynch.

At the time she signed the 1984 and 1985 returns, Margaret questioned David about why the returns contained no income reflecting the money that he had given her in those years. She stated that he gave her

> such a bizarre explanation that I don't think I could even repeat it, I mean what he told me. * * * It was something along the fact that it had been investment-- that he had investments in * * * [Hitech] that had been lost and this was return, or something along those lines. * * * it just didn't make sense to me.

Petitioner suspected that David was not telling her the truth, but she would not contradict him or press him further on the matter. David had in the past frequently evaded giving answers to questions about his business and finances, and when Margaret or others "probed", he would often "fly into a rage" and occasionally throw things.

## OPINION

The United States Court of Appeals for the Ninth Circuit remanded this case to allow the Tax Court to apportion relief under the "innocent spouse" provisions of section 6013(e). Wiksell v. Commissioner, 90 F.3d 1459, 1464 (9th Cir. 1996). The Court of Appeals noted that one of the showings that a spouse seeking innocent spouse relief must make is that in signing the return the spouse did not know, and had no reason to know, of the substantial understatement. Id. at 1461. The Court of Appeals agreed that petitioner had reason to know of the substantial understatement, but observed that it was not clear that she should have known of the magnitude of the understatement. The Court of Appeals stated that "Application of the statute * * * potentially generates inequitable results", Id. at 1463, and remanded the case so that we could reevaluate our previous decision "with the knowledge that apportionment is both available and proper in this case." Id. at 1464. (Emphasis added).

We have reevaluated our prior decision, as directed, and have also evaluated the record generated by the further hearing.

By doing so we are led to conclude that petitioner's former spouse, David, was so secretive and devious about his financial affairs, and his business records were so hopelessly arcane and tangled, that it would have been impossible for petitioner to obtain even an approximate idea of the magnitude of David's dereliction.

Petitioner was, however, precisely aware of the amounts derived from Hitech via David that actually passed through her hands. As we have found, in 1984, petitioner was given 23 checks from Hitech, totaling $54,500. In 1985, petitioner received 15 Hitech checks totaling $140,500. During these same years petitioner spent substantial amounts for clothing for herself and her children, loans to a child, charitable and political contributions, entertainment and gifts, home furnishings, home repair and maintenance, credit card payments, mortgage payments, and numerous other miscellaneous expenses.

Taking all of the facts and circumstances into consideration, and mindful of the Circuit Court's assurance that apportionment here is both available and proper, we hold that petitioner did not know or have reason to know of the portions of the understatements attributable to the grossly erroneous items attributable to David in 1984 and 1985 in excess of the amounts represented by the Hitech checks received by petitioner from David in those years, and that it would be inequitable to hold her liable for deficiencies as to those portions.

But we also hold that it would not be inequitable to hold petitioner liable for 1984 and 1985 deficiencies in taxes related to the Hitech checks.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.